## *In re* CHUNG TOY HO AND WONG CHOY SIN.

(*Circuit, Court, D. Oregon.* May 23, 1890.)

CHINESE MERCHANTS—FAMILIES—IMMIGRATION—TREATY OF 1880.
 The wife and children of a Chinese merchant, who is entitled, under article 2 of the treaty of 1880, and section 6 of the act of 1884, to come within and dwell in the United States, are entitled to come into the country with him or after him, as such wife and children, without the certificate prescribed in said section 6.

(*Syllabus by the Court.*)

*Habeas Corpus.*
Mr. *Paul R. Deady,* for petitioners.
Mr. *Franklin P. Mayo,* for the United States.

DEADY, J. These two cases were heard together. The petitioners are the wife and child of Wong Ham, a well-known Chinese merchant, resident in Portland, Or., for some years past.

A short time since, he visited China, and returned here on the American bark Coloma, bringing with him the petitioners, who had never been in the United States. He, (Wong Ham,) being provided with the certificate required by section 6 of the act of July 5, 1884, (23 St. 116,) was allowed to land; but, the petitioners having no such certificate, their right to land was denied by the collector.

They then sued out writs of *habeas corpus,* directed to the master of the Coloma, who made return admitting the facts stated in the petition and the detention, and stating the cause thereof to be the refusal of the collector to allow the petitioners to land.

The district attorney was allowed to intervene on behalf of the United States, and the cases were heard on the facts stated in the respective petitions.

The action of the collector in refusing to allow the petitioners to land was based on a decision of the treasury department of August 19, 1889, (Treasury Decisions, 409,) in which it was said that the wife of a Chinese merchant who has never been in the United States cannot be allowed to enter the United States, with or without her husband, otherwise than upon the production of the certificate required by section 6 of the act of July 5, 1884.

By the treaty with China of November 17, 1880, (22 St. 13, art. 2,) it is provided, that—

"Chinese subjects, whether proceeding to the United States as teachers, students, merchants, or from curiosity, together with their body and household servants, and Chinese laborers who are now in the United States, shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation."

By section 6 of the act of July 5, 1884, (23 St. 116,) professedly passed "to execute" the stipulations of this treaty, a certain certificate is required

for the admission into the United States of "every Chinese person," other than a laborer, who may be entitled by said treaty to such admission.

Then came the act of October 1, 1888, (25 St. 504,) by which the coming or return of Chinese laborers to the United States is absolutely forbidden.

The manifest purpose of this legislation is to exclude Chinese laborers from coming or returning to the United States. The other classes—"teacher, student, and merchant"—are not required to have certificates before they can be admitted into the country, because their admission is intended to be restrained or limited, but to prevent laborers from being admitted under the guise or in the character of such classes.

There is no limitation on the right of these classes to come within and dwell in the United States. The statute only requires that such a person shall furnish the prescribed evidence that he belongs to one of these favored classes, when he may come and go at pleasure.

The admission of the petitioners is not within the mischief that the exclusion act was intended to remedy. They are both females, the child being about eight years of age. It is common knowledge that Chinese women are not laborers. The station in life of the petitioners, being the wife and child of a merchant, also shows they do not belong to the laboring class.

The petitioners are not, within the purview of the exclusion act of 1888, which is confined to laborers. Do they come within that of section 6 of the act of 1884, which requires "every Chinese person" other than a laborer to procure from his own government the certificate required by said section before he can be admitted into the United States?

Confessedly the petitioners are "Chinese persons," and are therefore within the letter of the statute. But in my judgment they are not the "persons" contemplated by congress in the passage of the act.

Chinese women are not teachers, students, or merchants; and therefore they cannot, as such, obtain the certificate necessary to show they belong to the favored class. But, as the wives and children of "teachers, students, and merchants," they do in fact belong to such class; and the proof of such relation with a person of this class, entitled to admission, is plenary evidence of such fact.

It ought not to be lightly, or without cogent reason, concluded that congress, in the passage of the act of 1884, professedly "to exeute" the treaty of 1880, really intended to limit or restrain its operation in this respect. The treaty (article 2) declares that a Chinese merchant may bring his "body and household servants" with him into the country, and they "shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation."

It is impossible to believe that parties to this treaty, which permits the servants of a merchant to enter the country with him, ever contemplated the exclusion of his wife and children. And the reason why they are not expressly mentioned, as entitled to such admission, is found in the fact that the domicile of the wife and children is that of the husband and

father, and that the concession to the merchant of the right to enter the United States, and dwell therein at pleasure, fairly construed, does include his wife and minor children; particularly when it is remembered that such concession is accompanied with a declaration to the effect that, in such entry and sojourn in the country, he shall be entitled to all the rights and privileges of a subject of Great Britain or a citizen of France.

There is nothing in the act of 1884 that indicates an intention on the part of congress to limit or restrain the privileges conceded to Chinese merchants by this article of the treaty. It only adds a rule or measure of evidence by which the fact of being such merchants may be conclusively established.

In Re Tung Yeong, 9 Sawy. 620, 19 Fed. Rep. 184, Judge HOFFMAN held that the minor children of Chinese merchants were entitled to admission into the country, either with the father or on being sent for by him, on the ground that they were not laborers, and said:

"It was not without satisfaction that I found there was no requirement of the law which would oblige me to deny to a parent the custody of his child, and to send the latter back across the ocean to the country from which he came."

It is true this decision was made in February, 1884, while the act requiring the production of a certificate from "every Chinese person" seeking to enter the United States was not passed until July 5, 1884, and therefore it is not authority on the question of whether the words "every Chinese person," in section 6 of the act, are limited to teachers, students, and merchants, and do not include their wives and children. But it is direct authority in favor of the conclusion that the children of a Chinese merchant, under article 2 of the treaty of 1880, are entitled to admission into the United States with their father or after him; and, if a child, why not his wife?

My conclusion is that under the treaty and statute, taken together, a Chinese merchant who is entitled to come into and dwell in the United States is thereby entitled to bring with him, and have with him, his wife and children. The company of the one, and the care and custody of the other, are his by natural right; and he ought not to be deprived of either, unless the intention of congress to do so is clear and unmistakable.

The petitioners are illegally restrained of their liberty, and are entitled to be discharged from custody; and it is so ordered.