# UNITED STATES *v.* MRS. GUE LIM.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF WASHINGTON.

No. 128.  Submitted January 29, 1900. — Decided February 26, 1900.

Under the act of July 5, 1884, c. 220, 23 Stat. 115, construed in connection with the treaty with China of November 17, 1880, 22 Stat. 826, the wives and minor children of Chinese merchants domiciled in this country, may enter the United States without certificates.

DISTINCT appeals were taken direct to this court from the judgment of the District Court of the United States for the District of Washington, Northern Division, in the case of the above defendant in error, Mrs. Gue Lim, and from the judgment of the Western Division of that court in the cases of Ah Tong, Yee Yuen and Ah Quong, under the fifth clause of the fifth section of the act of March 3, 1891, c. 517, creating the Circuit Court of Appeals, 26 Stat. 826, 828, because the cases involve, among other questions, the construction of the treaty between the United States and China, entered into in 1880, 22 Stat. 826, article second, as affected by the third article of the treaty of December 8, 1894, 28 Stat. 1210.   The various appeals were heard here as one case.

The facts in regard to Mrs. Gue Lim were agreed upon in the court below, and it appears therefrom that she is the lawful wife of Fook Kee, a Chinese merchant engaged in buying and selling merchandise in the city of Seattle and State of Washington, under the firm name of Fook Kee & Company. He was not engaged in the performance of any manual labor, except such as was necessary in the conduct of his business as such merchant, for over one year next preceding the date of his last departure from the United States, which was in April, 1896, and was in all respects a Chinese merchant lawfully domiciled in the United States.   He arrived at the port of Tacoma, Washington, from China, accompanied by his wife, this being her first arrival in the United States, and the collector of cus-

toms, acting under general instructions from the Secretary of the Treasury, allowed her to land on the —— day of May, 1897, without the production of the certificate mentioned in section sixth of the act of July 5, 1884. 23 Stat. 115, c. 220. Complaint was subsequently made to the District Court that she was a Chinese laborer, and was found unlawfully in the United States, in the county of King, in the District of Washington, on the 2d day of October, 1897, without having been registered as a Chinese laborer, and without having in her possession a certificate of registration as such laborer. and without having any other legal right or authority to be and remain in the United States.

A warrant was issued by the District Court, upon which she was arrested, and after hearing evidence on behalf of the plaintiff and defendant the court decided (83 Fed. Rep. 136) that she was not a Chinese laborer, but the wife of a Chinese merchant lawfully domiciled and doing business as a merchant, and was not excluded by the laws of the United States from coming to or remaining in the United States, and she was therefore discharged from custody and the cause dismissed.

The other defendants in error had been admitted by the collector of customs at Port Townsend, and were thereafter adjudged by the United States commissioner, upon complaint made before him, to be Chinese laborers unlawfully in the United States, and the commissioner thereupon ordered them to be deported to China. They appealed from such decision, and the United States District Court for the District of Washington, Western Division, after hearing the evidence, decided that the defendants were minor children of Chinese merchants, and that they were lawfully entitled to be and remain in the United States.

The facts were agreed upon in the court below, and they are stated in the record as follows:

(1.) The defendants were born in China of parents lawfully married, and had resided in that country up to the time they came to the United States to live with their respective fathers, and were still minors under the age of fifteen years.

(2.) The fathers of these boys were, and for a long time prior

to the coming of the boys to this country, had been *bona fide*
.Chinese merchants, lawfully residing and doing business in the
city·of Walla Walla, in the State of Washington,.and had sent
for their sons to come from China to live with them in Walla
Walla, where they were residing with their fathers when ar-
rested by a United States immigration officer.

(3.) The boys had never procured any certificate under
section sixth of the act of July 5, 1884, (*supra*,) but relied
entirely upon the status of their fathers as merchants here
to entitle them to come to this country, and upon that claim
had been admitted by the collector of customs at. Port
Townsend.

A judgment discharging the defendants having been entered,
the United States appealed to this court.

*Mr. Assistant Attorney General Hoyt* for the appellant.

No appearance for the appellee.

MR. JUSTICE PECKHAM, after stating the facts, delivered the
opinion of the court.

The question here arising in regard to the correctness of the
decision of the District Court in the case of the married woman
depends for its solution upon the construction to be given to
the sixth section of the act of Congress of 1884, c. 220, 23 Stat.
115, which is set forth in the margin.[1]

---

[1] SEC. 6. That in order to the faithful execution of the provisions of this
act, every Chinese person, other than a laborer, who may be entitled by said
treaty or this act to come within the United States, and who shall be about
to come to the United States, shall obtain the permission of and be identified
as so entitled by the Chinese government, or of such other foreign govern·
ment of which at the time such· Chinese person shall be a subject, in each
case to be evidenced by a certificate issued by such government, which
certificate shall be in English language, and shall show such permission,
with the name of the permitted person in his or her proper signature, and
which certificate shall state the individual, family and tribal name in full,
title or official rank, if any, the age, height and all physical peculiarities,
former and present occupation or profession, when and where and how long
pursued, and place of residence of the person to whom the certificate is
issued, and that such person is entitled by this act to come within the

Opinion of the Court.

That section must be construed in connection with the treaty concluded between this country and China in November, 1880. 22 Stat. 826.

It is contended on the part of counsel for the Government that by the subsequent treaty of March, 1894, 28 Stat. 1210, the two Governments have agreed that the requirements of a certificate as provided for in the sixth section of the act of Congress shall apply to all permitted Chinese subjects who must, without exception, produce such certificates. Article two of the treaty of 1880 and article three of the treaty of 1894 are set out in the margin.[1]

---

United States. If the person so applying for a certificate shall be a merchant, said certificate shall, in addition to above requirements, state the nature, character and estimated value of the business carried on by him prior to and at the time of his application as aforesaid. . . . The certificate provided for in this act and the identity of the person named therein shall, before such person goes on board any vessel to proceed to the United States, be viséd by the indorsement of the diplomatic representatives of the United States in the foreign country from which said certificate issues, or of the consular representative of the United States at the port or place from which the person named in the certificate is about to depart; and such diplomatic representative or consular representative whose indorsement is so required is hereby empowered, and it shall be his duty, before indorsing such certificate as aforesaid, to examine into the truth of the statements set forth in said certificate, and if he shall find upon examination that said or any of the statements therein contained are untrue it shall be his duty to refuse to indorse the same. Such certificate viséd as aforesaid shall be *prima facie* evidence of the facts set forth therein, and shall be produced to the collector of customs of the port in the district in the United States at which the persons named therein shall arrive, and afterwards produced to the proper authorities of the United States whenever lawfully demanded, and shall be the sole evidence permissible on the part of the person so producing the same to establish a right of entry into the United States; but said certificate may be controverted and the facts therein stated disproved by the United States authorities.

[1] *Treaty of* 1880.

Article II.

Chinese subjects, whether proceeding to the United States as teachers, students, merchants or from curiosity, together with their body and household servants, and Chinese laborers who are now in the United States, shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities and exemptions which are accorded to the citizens and subjects of the most favored nation.

We do not think the treaty of 1894 alters the result flowing from the treaty of 1880 and the act of 1884. The question is, whether under the act of 1884, construed in connection with the treaty of 1880, the wife of a Chinese merchant, domiciled in this country, may enter the United States without a certificate, because she is the wife of such merchant.

Although the third article of the treaty of 1894 does speak of certificates for Chinese subjects therein described, who already enjoy the right to enter the country, the question recurs whether the certificate of the husband who himself enjoys the right is not enough for the wife, the fact being proved or admitted that she is such wife. Possibly the result of the treaty of 1894 may be held to be, instead of simply prohibiting the entrance of Chinese laborers, to restrict the right of entry to those classes who are specially named in the third article of the treaty. But the question would still remain whether the wives of the members of the classes privileged to enter, were not entitled themselves to enter by reason of the right of the husband and without the certificate mentioned in the act of 1884.

There has been some difference of opinion among the lower courts as to the true construction to be given to the treaty and the act of Congress. The judges in some cases have taken the view that the wife and minor children of a Chinese merchant, who is himself entitled, under the second article of the treaty of 1880 and section sixth of the act of 1884, to come within and dwell in the United States, were entitled to come into the country with him or after him as such wife and children without the certificate prescribed in that section. Other judges

---

*Treaty of* 1894.
Article III.

The provisions of this convention shall not affect the right at present enjoyed of Chinese subjects, being officials, teachers, students, merchants or travellers for curiosity or pleasure, but not laborers, of coming to the United States and residing therein. To entitle such Chinese subjects as are above described to admission into the United States they may produce a certificate from their government or the government where they last resided viséd by the diplomatic or consular representative of the United States in the country or port whence they depart.

have held that they were not entitled to enter the country without the production of the certificate mentioned in the act.

Those cases holding the right of the wife to enter without a certificate are *In re Chung Toy Ho*, 42 Fed. Rep. 398, in the Circuit Court, District of Oregon, May, 1890, in which case the opinion was delivered by Judge Deady; *In re Lee Yee Sing*, 85 Fed. Rep. 635, decided in 1898 in the District Court for the State of Washington; also in this case, *United States* v. *Gue Lim*, 83 Fed. Rep. 136, District Court of Washington, 1897.

Those adverse to the doctrine are *In re Ah Quan*, 21 Fed. Rep. 182, 186, decided in 1884 in the Circuit Court, District of California; *In re Ah Moy*, 21 Fed. Rep. 785, in the same court, September, 1884; *In re Wo Tai Li*, 48 Fed. Rep. 668, in the District Court, Northern District of California, August, 1888; *In re Lum Lin Ying*, 59 Fed. Rep. 682, District Court of Oregon, February, 1894; *In re Li Foon*, 80 Fed. Rep. 881, Circuit Court, Southern District of New York, 1897.

Some of the latter cases do not involve the exact point now before the court, but they are in the direction stated.

It is not necessary to review these cases in detail. It is sufficient to say that we agree with the reasoning contained in the opinion delivered by Judge Deady. *In re Chung Toy Ho*, 42 Fed. Rep. *supra*. In our judgment the wife in this case was entitled to come into the country without the certificate mentioned in the act of 1884.

The act of 1882, of which that of 1884 was an amendment, was passed, as is stated in its title, " To execute certain treaty stipulations relating to Chinese," and therefore we must assume that the body of the act has that purpose.

This court has already sustained the power of Congress to provide for excluding or expelling Chinese, even in contravention of a treaty; also the power to intrust the final determination of the facts upon which the individual is to be expelled, to an executive officer. *Fong Yue Ting* v. *United States*, 149 U. S. 698; *Wong Wing* v. *United States*, 163 U. S. 228. But it is not the power of Congress over the subject with which we are now dealing. The question is, What did Congress

mean by the act of 1884? Some light upon that question can be derived from the treaty of 1880, which must be read in connection with it. By article two of the treaty, Chinese subjects proceeding to the United States, either as teachers, students, merchants, or from curiosity, together with their body and household servants, were to be allowed to go and come of their own free will and accord, and were to be " accorded all the rights, privileges, immunities and exemptions which are accorded to the citizens and subjects of the most favored nation." It was for the avowed purpose of carrying these treaty stipulations into effect that the act of 1882, 22 Stat. 58, and the amended act of 1884. 23 Stat. 115, were passed.

It is impossible to entertain the belief that the Congress of the United States, immediately after the conclusion of a treaty between this country and the Chinese Empire, would, while assuming to carry out its provisions, pass an act which violated or unreasonably obstructed the obligation of any provision of the treaty. As was stated by Mr. Justice Harlan in delivering the opinion of the court in *Chew Heong* v. *United States*, 112 U. S. 536, 539 : " The court should be slow to assume that Congress intended to violate the stipulations of a treaty so recently made with the government of another country. . . . Aside from the duty imposed by the Constitution to respect treaty stipulations when they become the subject of judicial proceedings, the court cannot be unmindful of the fact that the honor of the government and the people of the United States is involved in every inquiry whether rights secured by such stipulations shall be recognized and protected. And it would be wanting in proper respect for the intelligence and patriotism of a coördinate department of the government were it to doubt, for a moment, that these considerations were present in the minds of its members when the legislation in question was enacted." We ought, therefore, to so consider the act, if it can reasonably be done, as to further the execution and not to violate the provisions of the treaty.

There is nothing in the act of 1884 which, in terms, enumerates and provides for the admission of particular classes of

persons. It speaks in the sixth section of those who may be entitled under the treaty or under the act to come within the United States, but the act does not assume to enlarge the number or character of the classes specially named in the treaty as entitled to admission. It is plain that in this case the woman could not obtain the certificate as a member of any of those specially enumerated classes. She is neither an official, a teacher, a student, a merchant nor a traveller for curiosity or pleasure. She is simply the wife of a merchant, who is himself a member of one of the classes mentioned in the treaty as entitled to admission. And yet it is not possible to presume that the treaty, in omitting to name the wives of those who by the second article were entitled to admission, meant that they should be excluded. If not, then they would be entitled to admission because they were such wives, although not in terms mentioned in the treaty.

Does the sixth section mean that in such case the wife must obtain the certificate therein provided for? We think not. Although the section provides that every Chinese person, other than a laborer, who may be entitled by the treaty or by the act to enter the United States must have a certificate, the contents whereof are therein stated, yet when we come to look at the particulars which it directs shall be set forth in the certificate, we see that the section was not drawn with the view of embracing the case of one who claims the right of admission simply as the wife of a person entitled to enter and remain in this country. She may have had no former, and may have no present, occupation or profession within the meaning of the section, and, of course, in that case, it cannot be stated when and where and how long it has been pursued.

The section assumes that the applicant for a certificate has some occupation or profession which has been theretofore pursued at some place, which is not the case here.

Various other provisions in the section render it plain to our minds that it was never intended to extend to the wives of persons who were themselves entitled to entry. A certificate that should only state that the person therein identified was the wife of a member of the admitted class, and had no occu-

pation or profession, it seems to us would not be a compliance with the section, and if not, then it would not be possible to comply with its provisions in this case, and the consequence would be that (if a certificate were necessary under the sixth section,) the statute would exact as a condition of entrance into the country, that which the person could not perform, although otherwise entitled to enter.

While the literal construction of the section would require a certificate, as therein stated, from every Chinese person, other than a laborer, who should come into the country, yet such a construction leads to what we think an absurd result, for it requires a certificate for a wife of a merchant, among others, in regard to whom it would be impossible to give the particulars which the statute requires shall be stated in such certificate.

"Nothing is better settled," says the present Chief Justice, in *Lau Ow Bew* v. *United States*, 144 U. S. 47, 59, "than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion."

The purpose of the sixth section, requiring the certificate, was not to prevent the persons named in the second article of the treaty from coming into the country, but to prevent Chinese laborers from entering under the guise of being one of the classes permitted by the treaty. It is the coming of Chinese laborers that the act is aimed against.

It was said in the opinion in the *Lau Ow Bew case*, in speaking of the provision that the sole evidence permissible should be the certificate: "This rule of evidence was evidently prescribed by the amendment as a means of effectually preventing the violation or evasion of the prohibition against the coming of Chinese laborers. It was designed as a safeguard to prevent the unlawful entry of such laborers, under the pretence that they belong to the merchant class or to some other of the admitted classes."

It was also held in that case that although the literal wording of the statute of 1884, section six, would require a certificate in the case of a merchant already domiciled in the United States and who had left the country for temporary purposes,

*animo revertendi*, yet its true and proper construction did not include his case, and the general terms used in the act were limited to those persons to whom Congress manifestly intended to apply them, which would be those who were about to come to the United States for the first time, and not to those Chinese merchants already domiciled in the United States who had gone to China for temporary purposes only, with the intention of returning. The case of *Wan Shing* v. *United States*, 140 U. S. 424, was referred to, and attention called to the fact that the appellant therein was not a merchant but a laborer, who had acquired no commercial domicil in this country, and was clearly within the exception requiring him to procure and produce the certificate specified in the act. The ruling was approved, and the differences in the two cases pointed out by the Chief Justice.

To hold that a certificate is required in this case is to decide that the woman cannot come into the country at all, for it is not possible for her to comply with the act, because she cannot in any event procure the certificate even by returning to China. She must come in as the wife of her domiciled husband or not at all. The act was never meant to accomplish the result of permanently excluding the wife under the circumstances of this case, and we think that, properly and reasonably construed, it does not do so. If we hold that she is entitled to come in as the wife, because the true construction of the treaty and the act permits it, there is no provision which makes the certificate the only proof of the fact that she is such wife.

In the case of the minor children, the same result must follow as in that of the wife. All the reasons which favor the construction of the statute as exempting the wife from the necessity of procuring a certificate apply with equal force to the case of minor children of a member or members of the admitted classes. They come in by reason of their relationship to the father, and whether they accompany or follow him, a certificate is not necessary in either case. When the fact is established to the satisfaction of the authorities that the person claiming to enter, either as wife or minor child, is in fact the wife or minor child of one of the members of a class mentioned

in the treaty as entitled to enter, then that person is entitled to admission without the certificate.

These views lead to the affirmance of the judgments, and they are accordingly

*Affirmed.*