### TSOI SIM v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   May 5, 1902.)

No. 738.

1. CHINESE EXCLUSION—DEPORTATION FOR FAILURE TO OBTAIN CERTIFICATE—MARRIAGE OF CHINESE WOMAN TO AMERICAN CITIZEN.

Section 6 of Act May 5, 1892, as amended by Act November 3, 1893 (28 Stat. 7), requiring all Chinese laborers then lawfully in the United States to procure certificates of residence within 6 months, under penalty of deportation, cannot be construed to authorize the deportation of a Chinese woman who lawfully entered the country before the enactment of any exclusion laws, and remained, but who failed to obtain the required certificate, where she was thereafter, and prior to her arrest, lawfully married to a citizen of the United States. Assuming that she was subject to deportation previous to her marriage, she then, having lawfully entered the country, took the status of her husband as to the right of domicile in the United States, and, if deported under a strict construction of the act, would have the right to immediately return, and remain as the lawful wife of an American citizen.

2. STATUTES—CONSTRUCTION—RESTRICTION OF GENERAL TERMS.

In the construction of statutes, general terms and language should be so restricted in their application as not to lead to injustice, oppression, or an absurd consequence clearly not within the intention of the act.

Appeal from the District Court of the United States for the Northern District of California.

The agreed statement of facts, and the statute referred to in the opinion of the court, are as follows:

"Agreed Statement of Facts. First. That defendant, Tsoi Sim, is a female

---

¶ 1. Citizenship of Chinese, see note to Gee Fook Sing v. U. S., 1 C. C. A. 212; Lee Sing Far v. U. S., 35 C. C. A. 332.

of Chinese descent, and was born in China on February 14th, 1879. Second. That she came to the United States of America from China when she was three years of age, and prior to the passage of the act of congress known as the 'Chinese Restriction and Exclusion Act of May 6th, 1882'; that since coming to the United States, as aforesaid, she has never been out of, but has continuously resided in, the state of California, and in the United States, and was residing therein with her husband at the time of her arrest herein. Third. That said defendant, Tsoi Sim, was never registered as provided by the act of congress providing for the registration of Chinese persons. Fourth. That on the 16th day of November, 1900, said defendant, Tsoi Sim, was lawfully married to Yee Yuk Lum in the state of California, United States of America, in accordance with the laws of the state of California; that she ever since has been, and now is, the lawful, sole, and only wife of said Yee Yuk Lum, and that ever since her said marriage, up to the time of her arrest herein, she resided with her said husband in the city and county of San Francisco, state of California, United States of America. Fifth. That said Yee Yuk Lum, the husband of said defendant, Tsoi Sim, was born in the United States of America, and subject to the jurisdiction thereof, and is a citizen thereof, and of the state of California, and is a laborer by occupation." Section 6 of the act of May 5, 1892, as amended by the act of November 3, 1893 (28 Stat. 7), provides that: "It shall be the duty of all Chinese laborers within the limits of the United States who were entitled to remain in the United States before the passage of the act, to which this is an amendment, to apply to the collector of internal revenue of their respective districts within six months after the passage of this act for a certificate of residence; and any Chinese laborer within the limits of the United States, who shall neglect, fail, or refuse to comply with the provisions of this act, and the act to which this is an amendment, or who, after the expiration of said six months shall be found within the jurisdiction of the United States without such certificate of residence shall be deemed and adjudged to be unlawfully within the United States, and may be arrested * * * and taken before a United States judge, whose duty it shall be to order that he be deported from the United States, as provided in this act, and in the act to which this is an amendment, unless he shall establish clearly to the satisfaction of said judge that by reason of accident, sickness or other unavoidable cause he has been unable to secure his certificate, and to the satisfaction of said United States judge, and by at least one credible witness, other than Chinese, that he was a resident of the United States on the 5th day of May, 1892; and if, upon the hearing it shall appear that he is so entitled to a certificate, it shall be granted upon his paying the costs."

William M. Madden and H. C. Dibble, for appellant.
Marshall B. Woodworth, U. S. Atty.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after stating the foregoing facts, delivered the opinion of the court.

Appellant was arrested upon a complaint charging her with being "a Chinese manual laborer * * * now within the limits of the Northern district of California aforesaid, without the certificate of residence required by the act of congress entitled 'An act to prohibit the coming of Chinese persons into the United States,' approved May 5, 1892, and the act amendatory thereof, approved November 3, 1893."

The case was heard before United States Commissioner Heacock, who found "that the said Tsoi Sim is a Chinese manual laborer, and was born in, and is a subject of, the empire of China; that she was found within the limits of the United States, to wit, in the city and

county of San Francisco, in the Northern district of California, on the 20th day of April, A. D. 1901; and that when she was so found, as aforesaid, she was without the certificate of residence required by said acts; and she has not clearly established that by reason of accident, sickness, or other unavoidable cause she has been unable to procure such certificate"; and ordered her to be deported from the United States to the country from whence she came, to wit, China. The district court affirmed the judgment of deportation, and from this judgment an appeal is taken to this court. The case was heard upon a stipulation as to the facts, which, together with the statute under which the order of deportation was made, is set forth in the foregoing statement of facts.

It will, for the purposes of this opinion, be conceded that, if the arrest of appellant had been made and hearing had prior to the time of her marriage to a citizen of the United States, she would not have been entitled to remain in this country. Does the fact that appellant was lawfully married to a citizen of the United States, prior to her arrest, change her status so as to make her residence here, thereafter, lawful? The question is important, and deserves careful consideration. The case is a novel one, and is different in material respects from any of the Chinese cases heretofore considered by this court. From the agreed statement of facts it appears that when appellant came to the United States there was no restriction or exclusion act which prohibited her coming. Her act in coming to the United States was lawful; she was at that time 3 years of age; she remained lawfully in the United States for a period of 10 years prior to the passage of the "Act to amend an act entitled an act to prohibit the coming of Chinese persons into the United States," approved May 5, 1892. The time for registration under the law expired in May, 1894. She did not register, and thereafter remained unlawfully in the United States, subject to be deported to China at any time, up to the time of her marriage, unless her infancy could be considered as a legal excuse for her not registering,—a question which will not be discussed. There being no authoritative cases directly in point, we must seek by the analogy of other cases,—and especially the decisions of the courts, under the different statutes relative to the right of Chinese persons to come into the United States,—and by independent reasoning, for the principles of law which should govern and control this case. If she had been the daughter of a merchant, she would have been entitled to remain in the United States without being registered. In Re Chung Toy Ho (C. C.) 42 Fed. 398, 9 L. R. A. 204, Judge Deady held that the wife and children of a Chinese merchant who is entitled, under article 2 of the treaty of 1880 and section 6 of the act of 1884, to come within and dwell in the United States, are entitled to come into the United States with him, or after him, as such wife and children, without the certificate prescribed in said section 6. In the course of the opinion, after referring to the treaty with China, the court said:

"It is impossible to believe that parties to this treaty, which permits the servants of a merchant to enter the country with him, ever contemplated the exclusion of his wife and children. And the reason why they are not expressly mentioned, as entitled to such admission, is found in the fact that

the domicile of the wife and children is that of the husband and father, and that the concession to the merchant of the right to enter the United States, and dwell therein at pleasure, fairly construed, does include his wife and minor children; particularly when it is remembered that such concession is accompanied with a declaration to the effect that, in such entry and sojourn in the country, he shall be entitled to all the rights and privileges of a subject of Great Britain or a citizen of France."

In U. S. v. Gue Lim, 176 U. S. 459, 464, 20 Sup. Ct. 415, 44 L. Ed. 544, the court called attention to the fact that there had been a difference of opinion in the lower courts as to the true construction to be given to the treaty and the acts of congress, and after citing several cases said:

"It is not necessary to review these cases in detail. It is sufficient to say that we agree with the reasoning contained in the opinion delivered by Judge Deady in Re Chung Toy Ho, supra. In our judgment, the wife in this case was entitled to come into the country without the certificate mentioned in the act of 1884."

The opinion concludes with the statement that:

"When the fact is established, to the satisfaction of the authorities, that the person claiming to enter, either as wife or minor child, is in fact the wife or minor child of one of the members of a class mentioned in the treaty as entitled to enter, then that person is entitled to admission without the certificate."

These cases recognize the principle that the domicile of the parents is the domicile of the children, and that the status of the wife is fixed by the status of the husband. That the domicile of the husband is the domicile of the wife is well settled; it was so expressly held in Anderson v. Watts, 138 U. S. 694, 706, 11 Sup. Ct. 449, 34 L. Ed. 1078. In that case the court said:

"The place where a person lives is taken to be his domicile until facts adduced establish the contrary, and a domicile, when acquired, is presumed to continue until it is shown to have been changed. Mitchell v. U. S., 21 Wall. 350, 352, 22 L. Ed. 584; Desmare v. U. S., 93 U. S. 605, 609, 23 L. Ed. 959; Shelton v. Tiffin, 6 How. 163, 12 L. Ed. 387; Ennis v. Smith, 14 How. 400, 14 L. Ed. 472. And, although the wife may be residing in another place, the domicile of the husband is her domicile. Story, Confl. Laws, § 46; Whart. Confl. Laws, § 43; and cases cited. Even where a wife is living apart from her husband, without sufficient cause, his domicile is in law her domicile. Cheely v. Clayton, 110 U. S. 701, 705, 4 Sup. Ct. 328, 28 L. Ed. 298. The rule is, said Chief Justice Shaw in Harteau v. Harteau, 14 Pick. 181, 185, 25 Am. Dec. 372, 'founded upon the theoretic identity of person and of interest between husband and wife, as established by law, and the presumption that from the nature of that relation, the home of the one is that of the other, and intended to promote, strengthen, and secure their interests in this relation, as it ordinarily exists, where union and harmony prevail.'"

See, also, 10 Am. & Eng. Enc. Law, 32, and authorities there cited.

There are exceptions to this general rule, not applicable to this case, where the wife has been deserted by her husband; it being held in such cases that she might establish a separate and independent domicile. Town of Watertown v. Greaves, 50 C. C. A. 172, 112 Fed. 183, 187.

Counsel for the United States rely upon the decision of this court in U. S. v. Chu Chee, 35 C. C. A. 613, 93 Fed. 797, 804. The facts in that case are readily distinguishable from the case at bar. There the defendants were the sons of a Chinese laborer residing in China, and

they came to the United States for the purpose of receiving an education as students, and were permitted to land upon presenting a consular's certificate which did not comply with the laws. After their arrival, they attended the public and private schools in this country; their status during all this time was that of their father; they were Chinese laborers, and were unlawfully in this country, and so continued up to the time of their arrest, and, not having the certificate as required by section 6 of the act of May 5, 1892, as amended by the act of November 3, 1893, were not entitled to remain in this country. In that case it was contended, upon the part of the defendants, that the status of Chinese aliens domiciled in the United States must be determined according to their status at the time of arrest, and not at the time of entry, and that, upon being arrested, it was competent for them to show, by affirmative proof, that they were students engaged in acquiring an education in our schools, and, being so engaged, they were not members of the prohibited class, and not subject to deportation. In reply to this contention, the court said:

"When, however, that domicile has been acquired contrary to and in violation of the laws of the United States, and when, as here, it is only through an unlawful entry into the United States that the Chinese persons secure a residence in this country, they cannot purge themselves of their offense by assuming the occupation of members of the privileged class, and establish their right to remain by proof of that character. The right of the defendants to land in this country on the claim of being students was dependent upon their producing to the collector of customs, at the port of their arrival, the certificate required by section 6 of the act of 1882, as amended; and, to entitle them to remain here, they must thereafter produce the same to the proper authorities whenever lawfully demanded."

This language must, of course, be construed with reference to the particular facts of that case. The appellant in the present case lawfully came to the United States, and remained here lawfully up to the time of the passage of the law requiring Chinese laborers in this country to procure the certificate of registration. After that time, and before her marriage, we shall assume, for the purposes of this opinion, that, although a female and an infant, she was subject to deportation, notwithstanding the expression used by Deady, Judge, in Re Chung Toy Ho, supra, that "it is common knowledge that Chinese women are not laborers." She bases her right to remain in this country upon the ground that, at the time of her arrest, she was the lawful wife of an American citizen. Was it the intention of congress to separate a wife from her husband upon any such ground? Appellant had committed no crime. The supreme court in Fong Yue Ting v. U. S., 149 U. S. 698, 730, 13 Sup. Ct. 1016, 37 L. Ed. 905, said:

"The order of deportation is not a punishment for crime. It is not a banishment in the sense in which that word is often applied to the expulsion of a citizen from this country by way of punishment. It is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government of the nation, acting within its constitutional authority, and through the proper departments, has determined that his continuing to reside here shall depend."

See, also, U. S. v. Wong Dep Ken (D. C.) 57 Fed. 206; In re Sing Lee (D. C.) 54 Fed. 334; Wong Wing v. U. S., 163 U. S. 228, 16 Sup. Ct. 977, 41 L. Ed. 140.

Appellant did not come to this country fraudulently, or in violation of any law. She did not get married in order to evade deportation. Her marriage was not fraudulent, but lawful, and in accordance with the usages and customs of our law. Whatever effect her error of omission in failing, during a few years of her infancy, to obtain a certificate of registration, if any she was entitled to, it certainly did not deprive her of the right to marry an American citizen lawfully domiciled in this country. This she did. By this act, her status was changed from that of a Chinese laborer to that of a wife of a native-born American. Her husband is not before the court, but his rights, as well as hers, are involved. The law is well settled that one born in the United States of Chinese parents who were permanently domiciled here, though an alien, is a citizen of the United States, and cannot be excluded therefrom, or denied the right of entry. Lee Sing Far v. U. S., 35 C. C. A. 372, 94 Fed. 834, 836; U. S. v. Wong Kim Ark, 169 U. S. 649, 705, 18 Sup. Ct. 456, 42 L. Ed. 890. It being the law that the wife and children of a Chinese merchant are permitted to remain in this country because the domicile of the wife and children is that of the husband and father, as was expressly held in Re Chung Toy Ho, and approved by the supreme court in U. S. v. Gue Lim, supra, upon what method of legal reasoning can it be held that the wife of an American citizen is not entitled to the same "rights, privileges, and immunities" under the law? The Chinese merchant does not stand upon a higher plane than the Chinaman who is born of parents, of Chinese descent, having a permanent domicile and residence in the United States. On the contrary, the native born, by virtue of his birth, becomes a citizen of the United States, and is entitled to greater rights and privileges than the alien merchant. The wife has the right to live with her husband; enjoy his society; receive his support and maintenance and all the comforts and privileges of the marriage relations. These are her, as well as his, natural rights. By virtue of her marriage, her husband's domicile became her domicile, and thereafter she was entitled to live with her husband, and remain in this country. In volume 3, Treasury Decisions (Jan.–Dec. 1900), appears a letter by the assistant secretary to the collector of customs, San Francisco, upon this question, as follows:

"Number 22,551. Treasury Department, October 19, 1900. The department is in receipt of your letter of the 10th inst., transmitting papers on appeal in behalf of Li Ham Shi, a Chinese woman, to whom admission was denied by you upon the ground: (1) That she cannot, under section 1994 of the Revised Statutes of the United States, take the status of her husband, who is a native born citizen of this country; and (2) that she is not admissible as the wife of a merchant, her husband not having been a merchant at the time of her application for admission. The solicitor of the treasury has rendered an opinion on this case, an extract from which follows: 'I do not think that section 1994, Revised Statutes, applies to this case. There is no question of citizenship as to the wife involved. She does not apply to be landed because of any supposed right to be lawfully "naturalized," but because she is the wife of a native-born citizen of the United States. I do not think her right to land depends on the status of her husband as a merchant, even assuming that the exclusion laws in this regard apply to a Chinese merchant who is a citizen of this country, but rather on her higher right not to be separated from her husband, who is a citizen of the United States, and is legally entitled to live in the country of his birth.' In view

of the foregoing, the appeal is hereby sustained, and you are ·directed to· release and land the said Li Ham Shi."

It is true that the views of this department do not reach the standard of judicial decisions, but are entitled to great respect, and are here given for the persuasive and sound reasoning therein contained. In arriving at the conclusion stated, we are not opening the door for the commission of fraud, or departing from the true construction of the statute. Conceding that, by applying the literal language of the statute, it might be held that she should be deported, yet is it not evident that such a construction would necessarily lead to absurd results without any benefit to the United States? The object and intent of the law was to deport Chinese not entitled to remain. If appellant was to be deported, she would have the unquestioned right to immediately return, and would be entitled to land, and remain in this country, upon the sole ground that she is the lawful wife of an American citizen.

Is it not manifest that congress never intended by the passage of the law to have it apply to a case like the present? One of the cardinal rules as to the interpretation of statutes is that they should receive a sensible construction. In U. S. v. Kirby, 7 Wall. 482, 486, 19 L. Ed. 278, Mr. Justice Field, in speaking for the court, said:

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter."

Applications of this rule have been made under a great variety of circumstances and conditions. Oates v. Bank, 100 U. S. 239, 244, 25 L. Ed. 580; Lau Ow Bew v. U. S., 144 U. S. 47, 59, 12 Sup. Ct. 517, 36 L. Ed. 340; Holy Trinity Church v. U. S., 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226; Lee Kan v. U. S., 10 C. C. A. 669, 62 Fed. 914, 918; U. S. v. Hogg, 50 C. C. A. 608, 112 Fed. 909, 912, and authorities there cited. The common sense of mankind approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted "that whoever drew blood in the streets should be punished with ·the utmost severity," did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. The same common sense accepts the ruling, cited by Plowden, that the statute of 1st Edward II, which enacts that a prisoner who breaks prison shall be guilty of a felony, does not extend to a prisoner who breaks out when the prison is on fire, "for he is not to be hanged because he would not stay to be burnt." Yet in each of these cases the defendant came within the strict letter of the law. In U. S. v. Kirby, the court held that:

"The act of congress which punishes the ·obstruction or retarding of the passage of the mail, or of its carrier, does not apply to a case of temporary detention of the mail caused by the arrest of the carrier upon an indictment for murder."

More directly applicable to this case is that of Holy Trinity Church v. U. S., 143 U. S. 457, 460, 472, 12 Sup. Ct. 511, 36 L. Ed. 226.

There the Holy Trinity Church, a corporation in New York, made a contract with one Warren, a rector of the Church of England, under which he was to remove to the city of New York, and enter the service of the corporation as rector and pastor of its church. In pursuance of this contract, Warren came to this country, and entered upon such service. Suit was thereafter brought by the United States against the corporation to recover the penalty of $1,000, it being claimed that the contract was in violation of the provisions of the act of congress of February 26, 1885 (23 Stat. 332), "to prohibit the importation and migration of foreigners and aliens under contract or agreement to perform labor in the United States." The circuit court held that the corporation was liable to the penalty prescribed by the act, and that the words "labor or service" of any kind cannot be given a restricted meaning, so as to exclude the vocation of a minister of the gospel, in view of the proviso which plainly signifies that they are intended to apply to all who labor in any professional callings not specially exempted. U. S. v. Church of the Holy Trinity (C. C.) 36 Fed. 303. In so deciding, the court followed the strict letter of the law. But the supreme court took a different view. The opinion is very able and quite lengthy. The court, among other things, took especial pains to prove "that this is a Christian nation," and asked, in the face of this and other facts: "Shall it be believed that a congress of the United States intended to make it a misdemeanor for a church of this country to contract for the services of a Christian minister residing in another nation?" and, at the close of the opinion, said:

"The construction invoked cannot be accepted as correct. It is a case where there was presented a definite evil, in view of which the legislature used general terms with the purpose of reaching all phases of that evil, and thereafter, unexpectedly, it is developed that the general language thus employed is broad enough to reach cases and acts which the whole history and life of the country affirm could not have been intentionally legislated against. It is the duty of the courts, under those circumstances, to say that, however broad the language of the statute may be, the act, although within the letter, is not within the intention, of the legislature, and therefore cannot be within the statute."

The judgment of the district court is reversed, and cause remanded, with instructions to enter an order for appellant's discharge.