**NAGLE, Commissioner of Immigration, v. YANG YUM.**

(Circuit Court of Appeals, Ninth Circuit. August 4, 1924.)

No. 4185.

1. **Aliens** ⊜⊸23(1)—**Chinese, identified by accredited official as his son, held entitled to enter United States.**

Under Chinese Exclusion Act May 6, 1882, § 13, as amended by Act July 5, 1884 (Comp. St. § 4300), and Act Sept. 13, 1888, § 14 (Comp. St. § 4314), exempting officials of Chinese government from operation of act, and Immigration Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), minor son of accredited official cannot be required to prove his relationship, but is entitled to enter on being identified by such . official.

2. **Aliens** ⊜⊸32(8)—**Finding that Chinese person's father no longer government official not authorized.**

Where Chinese person entered United States as minor son of Chinese government official in 1918, court could not find that father had lost his

⊜⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

official status in 1923, so as to warrant son's deportation, where son's brothers were admitted in December, 1922, because of father's official position, in absence of showing that such recognition was erroneously granted.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Maurice T. Dooling, Judge.

Petition for habeas corpus by Yang Yum, alias Yang Him, against John D. Nagle, as Commissioner of Immigration at the Port of San Francisco. From an order of the District Court (290 Fed. 623), granting the petition and directing petitioner's discharge, the Commissioner appeals. Affirmed.

John T. Williams, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellant.

Geo. A. McGowan, of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. Nagle, as commissioner of immigration at San Francisco, appealed from an order granting the petition of Yang Yum, alias Yang Him, for writ of habeas corpus, and directing his discharge.

Yang Yum arrived at San Francisco on January 4, 1918, accompanying Yang Gee Kee, who presented credentials and was landed as an official of the Chinese government. Yang Gee Kee personally identified Yang Yum as his minor son, but the immigration authorities, not being satisfied to land Yang Yum upon the evidence of Yang Gee Kee as to personal identity, detained him, and after a hearing the application of Yang Yum for admission was denied. Upon appeal to the Secretary of Labor deportation was ordered. Thereafter the excluding decision was set aside, the case was reopened, and Yang Yum, the detained, was then ordered paroled to the Chinese consul general at San Francisco, and finally, in July, 1923, Yang Yum's appeal was dismissed by the Secretary of Labor and deportation was ordered. These judicial proceedings were then instituted.

The commissioner contended in his return, made in July, 1923, to the petition for writ of habeas corpus, that Yang Gee Kee had for a long time ceased to be an official of the Chinese government. By traverse to the return Yang Gee Kee pleaded that he was an official of the Chinese government when he arrived in 1918, and when the Secretary of Labor ordered a parole of Yang Yum, and that thereafter, and at the time of the return, was president of the General Peace Association, operating under the authorization of the Chinese minister at Washington and the Chinese consul general at San Francisco, and the Chinese Six Companies of San Francisco, the presidents of which companies are attachés of the Chinese consulate at San Francisco; that the Peace Association sits as a voluntary court of arbitration of all matters in controversy between Chinese people within the United States.

[1] As an accredited official, Yang Gee Kee had a right to have a minor son accompany him, and no certificate for the son was necessary.

Mrs. Gue Lin, 176 U. S. 459, 20 Sup. Ct. 415, 44 L. Ed. 544 Upon this point counsel for the immigration authorities do not really disagree with the contention of counsel for petitioner; but, while they concede the right of a minor child of the accredited official to enter, they argue that it is a question of fact, for the determination by the administrative authority whether the person seeking to enter as a minor child of the accredited official is in fact the minor child of the exempt official. In a general sense that position is correct; but the statute imposes limitations as to the measure of proof which controls the executive officials in determining the question, and which we think have been disregarded in the instance under consideration. The right of Yang Gee Kee to enter in 1918 not having been questioned, exemption from the provisions of the act was also accorded to his servant. Section 13 of the Chinese Exclusion Act of May 6, 1882, amended by Act of July 5, 1884 (Comp. St. § 4300), is as follows:

"That this act shall not apply to diplomatic and other officers of the Chinese or other governments traveling upon the business of that government, whose credentials shall be taken as equivalent to the certificate in this act mentioned, and shall exempt them and their body and household servants from the provisions of this act as to other Chinese persons."

Section 14 of the Act of September 13, 1888 (Comp. St. § 4314), is as follows:

"That the preceding sections shall not apply to Chinese diplomatic or consular officers or their attendants, who shall be admitted to the United States under special instructions of the [Department of Commerce and Labor], without production of other evidence than that of personal identity."

In the general Immigration Act of February 5, 1917, it is provided by section 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), after defining and enumerating classes of aliens who shall be refused admission that:

"Nothing in this act shall be construed to apply to accredited officials of foreign governments, nor to their suites, families, or guests."

The benefits of the exemptions given to the accredited official, including his body and household servants and his wife and minor children, attach when the identity of the official himself is established; that is, when it is determined by the immigration officers that he is the person named in his credentials. Upon such determination the examination should end, for the statute takes further hold, and says he shall be admitted under special instructions of the Department of Commerce and Labor. The instructions may regulate methods of carrying out the statute, but cannot lessen the force of its mandate.

Furthermore, by virtue of the credentials the official so identified, being exempt from the general provisions of the act, may personally identify those persons whom he declares are his body and household servants and members of his personal family, and upon such identification such persons are at once excluded from the general provisions of the act and shall be admitted without further evidence. Such a construction of the statute is in accord with that usage and precedent which obtain in the mutual relations of nations at peace, and is founded

upon the principle that in the intercourse between friendly states, those intrusted with official power by a friendly government shall be freely accorded the privileges of admission, not only for themselves, but are to be trusted in naming their attendants and families. Our conclusion is therefore that in 1918 the immigration officials exceeded their authority in requiring production of other evidence than they had as to the identity of Yang Yum, and that they should have admitted him as the son of the accredited official, Yang Gee Kee.

[2] The commissioner, however, presents a further question by contending that, if it be decided that Yang Yum was identified as the son of the accredited official, and that upon identification, as defined, he should have been allowed to come into the United States in 1918, nevertheless the court should now refuse to release him because, between the time of his arrival in 1918 and that of the final decision of the executive authorities as to his right to be in the United States in 1923, Yang Yum has attained his majority, and because his father has not been in an official position under the Chinese government since about two years after his entry in 1918.

The question just suggested, though an issue before the District Court, was not made the ground of the decision of the learned judge, and we are not satisfied that the father has lost his official status and that a decision can be predicated upon such a finding. The records disclose that brothers of Yang Yum were admitted by order of the immigration authorities in December, 1922, as sons of an official of the Chinese government; the official status of the father as appears by his affidavit then being president of the Chinese General Peace Association, 146 Waverly Place, San Francisco, Cal.

It would therefore seem that, recognition having been given so recently by the executive authorities to Yang Gee Kee as an official, in the absence of a showing that such recognition was in fact erroneously granted, we cannot decide that he has no official status, and that Yang Yum, the detained, may be deported as one not lawfully within the United States.

Our judgment is that the order of the District Court must be affirmed, upon the ground that the applicant was entitled to enter and to remain as the son of an official of the Chinese government.

Affirmed.