### Ex parte CHIU SHEE.

(District Court, D. Massachusetts. October 17, 1924.)

No. 2759.

**1. Habeas corpus ⚖=25(1)—Proceeding properly before court, as involving interpretation of law as decision of immigration officials, is not final.**

Proceeding in habeas corpus to obtain release of person held for deportation by immigration authorities, who decided that Immigration Act May 26, 1924, prohibited her from landing, is properly before court as involving interpretation of law on which decision of immigration officials is not final.

**2. Aliens ⚖=51½, New, vol. 16A Key-No. Series—Chinese wife of American citizen held entitled to admission, notwithstanding quota statute.**

Chinese woman, born of foreign parents, who is wife of American citizen, is not prevented by Immigration Act May 26, 1924, § 13, from entering the country, in view of section 4.

Habeas Corpus. On application for writ to obtain release of Chiu Shee, held for deportation by immigration authorities. Release granted.

John G. Sullivan, of Boston, Mass., and A. Warner Parker, of Washington, D. C., for plaintiff.

The United States Attorney, for defendant.

LOWELL, District Judge. [1] Return on a writ of habeas corpus to obtain the release of a person held for deportation by the immigration authorities, who decided that the Immigration Act of May 26, 1924 (43 Stat. 153), prohibited her from landing. The case is properly before the court, as it involves the interpretation of a law on which the decision of the immigration officials is not final. Gegiow v. Uhl, 239 U. S. 3, 36 S. Ct. 2, 60 L. Ed. 114.

[2] These proceedings raise the question whether a Chinese woman, born of foreign parents, who is the wife of an American citizen, is prevented by the recent Immigration Act from entering this country, thus changing the settled law which allows such persons to join their husbands here (Tsoi Sim v. U. S., 116 F. 920, 54 C. C. A. 154), though not to be naturalized (Fong Yue Ting v. U. S., 149 U. S. 698, 13 S. Ct. 1016, 37 L. Ed. 905). A casual reading of the statute would seem to show that it has this result, but if we adopt the attitude toward such legislation of the Supreme Court of the United States in the leading case of Holy Trinity Church v. U. S., 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226, and consider the circumstances attending the passage of the act and the evils it was intended to prevent, we shall come to a contrary conclusion.

It is well known that the evil aimed at by this act was the presence in the United States of a large number of aliens, who were not desirous of adopting our customs, but preferred to follow their old ways, and were thus not likely to be assimilated with the rest of the population and become desirable citizens. The periodicals and newspapers have pointed out the dangers of such a situation, and have often figuratively expressed their fears by the prophecy that an ignorant mass of foreigners could not be refined into good material in the "melting

pot" of American civilization. We have also been treated to learned dissertations on the impossibility of combining brachycephalic and dolichocephalic races. This subject is interesting to those who understand it, if such there be, but not relevant to the present discussion, except as showing how deeply the danger of unlimited immigration has impressed the public mind.

The result desired by the passage of the act would not be furthered by prohibiting a wife from joining her husband, who is a citizen of the United States by virtue of his birth. U. S. v. Wong Kim Ark, 169 U. S. 649, 18 S. Ct. 456, 42 L. Ed. 890. It would make him discontented with his American citizenship, as it would deprive him of the society of his wife, to which he is entitled by law. Tsoi Sim v. U. S., 116 F. 920, 54 C. C. A. 154, and cases cited.

A careful scrutiny of the provisions of the act will show that they are inconsistent with one another. Section 4, relating to nonquota immigrants, provides:

"When used in this act the term 'nonquota immigrant' means (a) an immigrant who is the unmarried child under eighteen years of age, or the wife of a citizen of the United States who resides therein at the time of the filing of a petition under section 9" (which provides for the admission of such persons, who are not reckoned in the quota); "(b) an immigrant returning from a temporary visit abroad; (c) an immigrant with his wife and children, if he were born in Central or South America or certain of the West Indies; (d) an immigrant, with his wife and children, who is a minister or a professor; or (e) a student."

Section 13, on which the immigration officials base their decision, provides:

"(c) No alien ineligible to citizenship shall be admitted to the United States unless such alien (1) is admissble as a nonquota immigrant under the provisions of subdivision (b), (d) or (e) of section 4; or (2) is the wife, or the unmarried child under eighteen years of age, of an immigrant admissible under such subdivision (d) and is accompanying or following to join him; or (3) is not an immigrant as defined in section 3."

It will be noticed that subdivision (a) of section 4, which relates to the wives of American citizens, was not included among the exemptions. On this omission the assumption is based that Congress expressly forbade the entry of the wife of an American citizen, if she could not be naturalized. The assumption rests on an insecure foundation and arises from a literal construction of the act, without seeking to ascertain its intention. The result of such a construction would be that Congress showed itself more solicitous for the welfare of an alien minister or professor, whose wife is allowed to enter (section 13 [c]) than for that of American citizens. Such a result would be absurd, and we are told by the highest authorities that an act of Congress should not be so construed as to lead to absurdities. Lau Ow Bew v. U. S., 144 U. S. 47, 12 S. Ct. 517, 36 L. Ed. 340; Holy Trinity Church v. U. S., 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226, and cases cited. Nor is such a construction necessary. Section 4 (a), standing alone, would allow a Chinese wife of an American citizen, not only to be admitted, but to be admitted in excess of the quota. The omission of subdivision (a) of section 4 from the provisions of section 13 arose, not from a settled purpose of Congress to exclude such a wife, but from the fact that in considering section 13 Congress had only aliens in mind, and did not realize that the section as passed diminished the rights of American citizens, already carefully safeguarded by section 4 (a). The reason why this inconsistency was overlooked was that the report of the House Committee stated specifically that wives of American citizens were exempted, and the chairman of that committee (Mr. Johnson), in the debate in the House, emphasized this feature of the bill. Congressional Record, vol. 65, No. 93, p. 5851. The discrepancy between section 4 (a) and section 13 (c) is thus reconciled by construing the latter provision as applying only to aliens who are not related to American citizens.

We have seen by a careful study of the statute in the light of its attending circumstances that it allows Chinese wives to enter this country. As was pointed out in the Holy Trinity Church Case, this construction of the act is not statute making by the court, but is the result of a critical analysis of its provisions in order to arrive at the legislative intent. Judge Neterer, in an opinion filed September 23, 1924, of which I have been given a copy, has held that the wives of Chinese merchants, and the Chinese wives of American citizens, were not excluded by the Immigration Act of 1924. I follow this decision in so far as it relates to the case at bar.

The conclusion arrived at is supported by the decisions allowing the wives of Chinese merchants to accompany their husbands, though they were not expressly allowed to

do so by the terms of the statutes. In re Chung Toy Ho (C. C.) 42 F. 398, 9 L. R. A. 204; U. S. v. Mrs. Gue Lim, 176 U. S. 459, 20 S. Ct. 415, 44 L. Ed. 544. Compare, also, the cases relating to the contract labor clause of immigration laws, where the courts have interpreted the statutes very liberally in favor of immigrants. Holy Trinity Church v. U. S., 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; U. S. v. Laws, 163 U. S. 258, 16 S. Ct. 998, 41 L. Ed. 151; U. S. v. Gay, 95 F. 226, 37 C. C. A. 46; Kuwabara v. U. S., 260 F. 104, 171 C. C. A. 140; U. S. v. Union Bank of Canada (C. C. A.) 262 F. 91, 8 A. L. R. 1438; Ex parte Aird (D. C.) 276 F. 954; Ex parte Gouthro (D. C.) 296 F. 506; and the cases holding that Chinese merchants need not register nor procure certificates, Lau Ow Bew v. U. S., 144 U. S. 47, 12 S. Ct. 517, 36 L. Ed. 340; Tom Hong v. U. S., 193 U. S. 517, 24 S. Ct. 517, 48 L. Ed. 772. And see Lee Kan v. U. S., 62 F. 914, 10 C. C. A. 669.

The very recent case of Chung Fook v. White, 264 U. S. 443, 44 S. Ct. 361, 68 L. Ed. 781, is not inconsistent with the result above reached. It related to a minor detail of an immigration act, and while it may seem somewhat inconsistent with the cases relating to Chinese merchants to which we have above referred, it was not intended to affect those decisions, nor does it throw any doubt on the validity of the reasoning in the Holy Trinity Church Case, which was not mentioned in the opinion.

Chiu Shee may be discharged.