**WEEDIN, Commissioner of Immigration, v.
UNG SUE CHU.***

No. 6855.

Circuit Court of Appeals, Ninth Circuit.

May 3, 1933.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash. (John F. Dunton, of Seattle, Wash., U. S. Immigration Service, on the brief), for appellant.

Fred H. Lysons, of Seattle, Wash. (O. P. Stidger and J. H. Sapiro, both of San Francisco, Cal., of counsel), for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

The question before us is whether or not the District Judge erred in discharging, on habeas corpus, appellee, whose claim to admission into this country, as the concededly minor son of a lawfully domiciled Chinese merchant, had been denied by the board of special inquiry and, on appeal, by the Secretary of Labor, because he was without "a passport or any official document in the nature of a passport, visaed or authenticated by an American Consular officer." The District Judge's decision was based upon the Treaty of 1880 with China (22 Stat. 826), which he held could not be annulled by presidential proclamation or departmental rule, but only by legislation evidencing a clear intent to abrogate or to disregard the treaty provisions.

In re Cheung Sum Shee v. Nagle, 268 U. S. 336, 45 S. Ct. 539, 540, 69 L. Ed. 985 (1925), held that under the treaty the wife and minor children of a resident Chinese merchant had had the right of entry prior to the Immigration Act of 1924 (43 Stat. 153), though only the "merchant" and not the wife or child was specifically mentioned in the treaty, citing with approval United States v. Gue Lim, 176 U. S. 459, 20 S. Ct. 415, 44 L. Ed. 544. Construing the act of 1924 "with the view to preserve treaty rights unless clearly annulled," the court, rejecting the Labor Department's contention, held that it could not conclude that "the general terms therein disclose a congressional intent absolutely to exclude the petitioners from entry." No question of visa or other documents was involved. In the Gue Lim Case, supra, as in Chew Heong v. United States, 112 U. S. 536, 5 S. Ct. 255, 28 L. Ed. 770, the court held that the provisions in the act of 1884 (23 Stat. 115) for certificates and visas must be construed as inapplicable to those members of the several treaty privileged classes of Chinese, for whom compliance with the terms of the act was an absolute impossibility; the alternative to that construction would have required the court to impute to Congress an intent to violate the treaty. These cases too involved no question as to the compatibility of such provisions with the treaty obligations, if and when their observance was possible. Indeed, the court obviously assumed that the broad language of the treaty[1] did not preclude the requirement of a visa or other document of identification by those persons for whom there was the possibility of obtaining them; no one questioned the duty of a "merchant" himself to get the proper papers as a condition to his readmittance. As Secretary of State Foster reported to the President on January 7, 1893 (4 Moore, Int. Law Dig. pp. 154–157):

"Treaty provisions granting the right of entry, travel, or residence in this country generally contain in some form the condition of subjection to the laws of the land. Such a condition, if not expressed, is necessarily implied. * * *

"It is doubtful whether any of these treaty provisions guaranteeing rights of travel, residence, etc., were intended or can be construed to be restrictive of the right of the contracting governments to control im-

---

[1] "Article II. Chinese subjects, whether proceeding to the United States as teachers, students, merchants or from curiosity, together with their body and household servants, and Chinese laborers who are now in the United States shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation." (22 Stat. 827.)

*Rehearing denied June 19, 1933.

migration into their respective territories. * * *

"But I do not think that even a provision guaranteeing the reception of immigrants— and much less a provision simply guaranteeing rights of entry, travel, or residence— could be held to prevent this Government from temporarily suspending immigration for the preservation of public health. It is simply the exercise of the police power of the nation, or, as it is called by the publicists, the right of self-preservation. * * *

"The subjection of conventional agreements to the power of self-preservation must be implied, for it can not be presumed that when governments contract with each other they will fail to take notice of the existence of so inherent a right of sovereignty and attempt to grant away that which, by the very nature of things is incapable of being granted.

"This Government has for some time freely exercised without question the right to regulate and restrict immigration by excluding criminals, paupers, and diseased persons. No government, so far as I know, has contested its exercise on the ground that the treaty right of its subjects to enter the United States for travel, sojourn, or business is infringed thereby. * * *"

There is no conflict, therefore, between the Treaty of 1880 and the departmental rule[2] adopted pursuant to section 24 of the Immigration Act of 1924 (8 USCA § 222)[3] or the executive order made pursuant to the Act of May 22, 1918, extended by the Act of March 2, 1921[4] (22 USCA §§ 223–227).

Construing the treaty as conditioning the right of entry on a compliance with the provisions of the immigration laws and the reasonable departmental and executive provisions lawfully adopted [see United States ex rel. London v. Phelps (C. C. A.) 22 F. (2d) 288], the decision of this court in the Tom Tang Shee Case, 63 F.(2d) 191, following the Polymeris Case, 284 U. S. 279, 52 S. Ct. 143, 144, 76 L. Ed. 291, compels a reversal. In those cases, as in this case, the immigrant was clearly admissible (there, under the Immigration Act, here, under the treaty), except that in each instance the prescribed documents were not presented. As was said in the Polymeris Case: "The relators must show not only that they ought to be admitted, but that the United States by the only voice authorized to express its will has said so."

Order reversed.

---

[2] "* * * Alien wives and minor children must present upon arrival at the port a duly visaed affidavit, prepared under the State Department form. * * * The lawful alien wives and minor children of Chinese merchants lawfully resident in the United States prior to July 1, 1924, should present" the same documents.

Another general rule of the Labor Department provides:

"No alien shall be admitted to the United States as a non-immigrant unless such alien shall present to the proper immigration official, at the port of arrival, a passport or official documents in the nature of a passport issued by the government of the country to which he owes allegiance and duly visaed and authenticated by an American consular officer, * * *" with a proviso exempting certain non-immigrants.

[3] "The Commissioner General, with the approval of the Secretary of Labor, shall prescribe rules and regulations for the enforcement of the provisions of this subchapter; but all such rules and regulations, in so far as they relate to the administration by consular officers, shall be prescribed by the Secretary of State on the recommendation of the Secretary of Labor."

[4] With certain exceptions nonimmigrant aliens "must present passports or official documents in the nature of passports issued by the governments of the countries to which they owe allegiance, duly visaed by consular officers of the United States."