### YEE WON v. WHITE, Commissioner of Immigration. *

(Circuit Court of Appeals, Ninth Circuit. May 12, 1919.)

No. 3259.

1. ALIENS ⬅️32(13)—CHINESE EXCLUSION—REVIEW BY COURTS.
Immigration officers have exclusive jurisdiction over Chinese exclusion cases, providing they give the applicant a fair hearing and do not abuse their discretion.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied October 14, 1919.

2. ALIENS ⚬─32(9)—CHINESE EXCLUSION—HEARING.

A Chinese exclusion hearing before immigration officers, which resulted in excluding a Chinese woman and her children upon ground that her husband had not satisfactorily established his status as a merchant, instead of a laundryman, *held* not to show abuse of discretion or denial of fair hearing.

Appeal from the District Court of the United States for the First Division of Northern District of California; Maurice T. Dooling, Judge.

Habeas corpus proceeding by Yee Won against Edward White, as Commissioner of Immigration at the Port of San Francisco. From a judgment sustaining a demurrer and denying the writ, petitioner appeals. Affirmed.

John L. McNab and Joseph P. Fallon, both of San Francisco, Cal., for appellant.

Annette Abbott Adams, U. S. Atty., of San Francisco, Cal., and Ben F. Geis, Asst. U. S. Atty., of Willow, Cal., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. The applicants, Chin Shee, Yee Tuk Oy, and Yee Yuk Hing, wife and minor children of the appellant, Yee Won, arrived at the port of San Francisco, Cal., on the steamship Tjisondari July 16, 1917. They applied for admission to the United States as the wife and minor children, respectively, of Yee Won, who, it is alleged, was a regularly domiciled Chinese merchant and a member of the exempt class. Admission was denied by the Commissioner of Immigration on the ground that the status of Yee Won as a merchant had not been satisfactorily established. On appeal to the Secretary of Labor, the excluding decision of the Commissioner of Immigration was sustained.

Yee Won thereupon filed a petition in the District Court for a writ of habeas corpus, alleging an unfair hearing by the immigration officials and abuse of the discretion committed to them by law. The United States demurred to the petition, and upon a hearing the court dismissed the petition. The case comes here on appeal, with the record of the proceedings before the Commissioner of Immigration submitted in support of such matters as are presented by the petition for the writ of habeas corpus and the demurrer to the petition.

[1, 2] It appears from this record that Yee Won first applied for admission into the United States at the port of San Francisco in April, 1901, as the minor son of a resident merchant. Yee Won was then 20 years of age. Admission was denied, and he was deported. He returned in November of the same year, and again applied for admission as the minor son of a resident merchant, and was admitted. The father of Yee Won died in San Francisco in 1908. In the latter part of 1910 Yee Won applied to the immigration officers at the port of San Francisco for an identification of his status. He was about to depart for China, and it was his purpose to secure such an identification as would secure his admission upon his return. He made no claim

that he was a merchant. His claim was that he was "a capitalist and property owner." He was granted such a certificate and departed for China in January, 1911. He returned on May 29, 1914. He was then 33 years of age. He claims to have married Chin Shee in China March 2, 1911, and that a daughter Yee Tuk Oy, was born to them November 28, 1912, and a son, Yee Yuk Hing, was born to them on November 2, 1913. These three are the present applicants to enter the United States. They were all born in China, and this is their first application to enter the United States.

In support of the application of Yee Won to have his wife and minor children admitted to the United States, he testified that he was "a property owner and a capitalist," and in support of that claim exhibited to the immigration officers bank books, certificates of stock, and other documents showing that he was a person of means. He testified that he exported fruit from San Francisco to Tai Sang Fruit Company, at Sidney, New South Wales, in the years 1915, 1916, and 1917; that his firm in San Francisco was known as Tai Sang, a branch of the Australian house; that his place of business, which was also the place where he lived, was 842 Washington street, second floor, room No. 2; that his business in the years 1916 and 1917 amounted to $20,000. There is no evidence that there was any fruit goods or merchandise at this place. He testified that the packing and shipping was done elsewhere. In the list of property submitted by Yee Won is a lease dated September, 1910, for premises designated as No. 2426 Sacramento street, San Francisco, for the term of 20 years commencing the 1st day of October, 1910, at the rate of $25 per month during the first 5 years. Upon this and other testimony, the immigration inspector advised the Commissioner of Immigration that it was thought that the evidence offered was such as to justify the granting of the status of Yee Won as an exempt person—i. e., "a property holder and capitalist"—and that he had done no labor during the last year past.

While the case was thus pending upon this report before the Immigration Commissioner, an anonymous letter was received by the Commissioner, stating that Yee Won was not a merchant, but a laundryman at Sacramento and Fillmore streets. A further investigation of the case was immediately ordered. The place mentioned in the anonymous letter as Sacramento and Fillmore streets was found to be 2426 Sacramento street, which Yee Won had previously listed in his property schedule as having under lease. It was also found that this place had been a Chinese laundry for a number of years. The immigration officer proceeded to submit a photograph of Yee Won to a number of the patrons of the laundry, who identified him as the Chinese person who had driven a laundy wagon and delivered laundry from that place for a number of years. Yee Won was thereupon called for further examination, that he might be confronted by the persons who had identified his photograph as that of their laundryman. He failed to appear, and the Commissioner of Immigration thereupon decided that the exempt status of Yee Won had not been established to his satisfaction, and denied the admission of the applicant on that ground.

On appeal to the Secretary of Labor, the case was reopened to

take further testimony as to the personal identification of Yee Won by the witnesses who had previously identified him by his photograph. Three of the witnesses were reported out of town, and their statements were not obtained. The statements of two other witnesses identifying Yee Won as their laundryman were obtained, but one of them was later not positive about the identification. Yee Ging, a cousin of Yee Won, was produced as the laundryman these witnesses had identified as Yee Won. The photographs of Yee Ging and Yee Won are in the record, and the resemblance appears to be so questionable and doubtful that certainly from their features there represented one would not be likely to be mistaken for the other. The result of this supplementary inquiry was submitted to the Assistant Secretary of Labor at Washington, and upon the whole case the Secretary of Labor sustained the exclusion decision of the Commissioner of Immigration at San Francisco, and thereupon the case was brought to the District Court upon a petition of Yee Won for a writ of habeas corpus.

In the decision of the District Court upon the demurrer to the petition, the court was of the opinion that the immigration authorities had found upon evidence that would warrant the finding that Yee Won had been engaged quite recently in driving a laundry wagon. This finding the court was of the opinion deprived him of the mercantile status to which he laid claim, but the court suggested the query whether, as Yee Won was "entitled to remain, his wife and children may not be admitted as the wife and children of one rightfully in this country who is entitled to the companionship of his wife and comfort of his children." In this court counsel for the appellant refers to this decision and says:

"It will thus be seen that the sole question is whether or not a Chinese person, entitled to remain in this country by virtue of our treaty with China, although held by the immigration officials to have lost his status as a merchant, is entitled to have his wife and minor children admitted."

By the treaty between the United States and China concluded in November, 1880 (22 Stat. 826), excluding certain Chinese laborers from coming to the United States, it was provided, among other things, that—

"The limitation of suspension shall be reasonable and shall apply only to Chinese who may go to the United States as laborers; other classes not being included in the limitation."

It is also provided that certain Chinese subjects, including "merchants," may "go and come of their own free will and accord." In section 2 of the act of November 3, 1893 (28 Stat. 7, c. 14 [Comp. St. § 4324]), Congress defined the terms "laborer" or "laborers" and "merchants" as follows:

"Sec. 2. The words 'laborer' or 'laborers,' wherever used in this act, or in the act to which this is an amendment, shall be construed to mean both skilled and unskilled manual laborers, including Chinese employed in mining, fishing, huckstering, peddling, laundrymen, or those engaged in taking, drying, or otherwise preserving shell or other fish for home consumption or exportation.

"The term 'merchant,' as employed herein and in the acts of which this is amendatory, shall have the following meaning and none other: A merchant is

a person engaged in buying and selling merchandise, at a fixed place of business, which business is conducted in his name, and who during the time he claims to be engaged as a merchant, does not engage in the performance of any manual labor, except such as is necessary in the conduct of his business as such merchant."

In section 1 of the act of August 18, 1894, "making appropriations for sundry civil expenses for the government for the fiscal year ending June thirtieth, eighteen hundred and ninety-five, and for other purposes" (28 Stat. 372-390, c. 301), it was provided:

"In every case where an alien is excluded from admission into the United States under any law or treaty now existing or hereafter made, the decision of the appropriate immigration or customs officers, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of the Treasury."

By the act of February 14, 1903, entitled "an act to establish the Department of Commerce and Labor" (32 Stat. 825, c. 552), the Commissioner General of Immigration, the Bureau of Immigration, and the Immigration Service were transferred from the Treasury Department to the Department of Commerce and Labor, and by the act of March 4, 1913 (37 Stat. 736-737, c. 141), to the Department of Labor. Under this last statute an appeal from the decision of the immigration officers excluding an alien from admission into the United States lies to the Secretary of Labor. This was the procedure followed in this case.

In United States v. Mrs. Gue Lim, 176 U. S. 459, 20 Sup. Ct. 415, 44 L. Ed. 544, it was held that the wives and minor children of Chinese merchants domiciled in this country might enter the United States without certificates. They come in by reason of their relationship to the husband and father, and whether they accompany him or follow him a certificate is not necessary in either case. That case was a deportation case, over which the judicial department of the government has exclusive jurisdiction. The present case is an exclusion case, over which the immigration officers have exclusive jurisdiction, providing that in the administration of the law they give the applicant a fair hearing and do not abuse their discretion.

The question submitted to the immigration officers was a question of fact. Was Yee Won a merchant? This fact had to be established to their satisfaction. In the case of In re Lee Lung, 102 Fed. 132, a writ of habeas corpus was issued by the District Court upon the petition of Lee Lung, a merchant in Portland, Or., on behalf of his wife and daughter, who had recently arrived at that port. His status as a merchant was not denied, but a landing was refused his wife and daughter by the collector of customs. The writ was dismissed; the court holding that it had no jurisdiction to review the action of the collector in such proceedings. The case was taken to the Supreme Court of the United States, where the judgment of the District Court was affirmed. Lee Lung v. Patterson, 186 U. S. 168-170, 22 Sup. Ct. 795, 797 (46 L. Ed. 1108). In the Supreme Court it was said:

"The testimony of several witnesses was introduced before the District Court against the objection of the district attorney. It showed that the petitioner was a merchant of Portland, Or.; that he had gone back to China and there married Li Tom Shi according to the Chinese customs and with

the usual Chinese ceremonies, but that he had another wife with whom he lived when in China, and that Li A. Tsoi was the daughter by that wife. It was testified that a man in China could have as many wives as he had means to support."

The objection to the landing of Li Tom Shi appears to have been that the laws of the United States did not recognize plural marriages, and, while they might be so recognized in China, the said Li Tom Shi was not the valid wife of Lee Lung under our laws. The objection to the landing of Li A. Tsoi, the daughter of Lee Lung by his first wife, was that the evidence was conflicting and inconclusive, and not of the satisfactory character required. The court, referring to the decision of the District Court holding that it was without jurisdiction to review the decision of the collector of customs, said:

"It was decided in Nishimura Ekiu's Case [142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146] that Congress might intrust to an executive officer the final determination of the facts upon which an alien's right to land in the United States was made to depend, 'and that, if it did so, his order was due process of law, and no other tribunal, unless expressly authorized by law to do so, was at liberty to re-examine the evidence on which he acted, or to controvert its efficiency.' This doctrine was affirmed in Lem Moon Sing v. United States, 158 U. S. 538 [15 Sup. Ct. 967, 39 L. Ed. 1082], and at the present term in Fok Yung Yo v. United States, 185 U. S. 296 [22 Sup. Ct. 686, 46 L. Ed. 917], and Lee Gon Yung v. United States, 185 U. S. 306 [22 Sup. Ct. 690, 46 L. Ed. 921]."

In conclusion, the court said:

"But jurisdiction is given to the collector over the right of the alien to land, and necessarily jurisdiction is given to pass on the evidence presented to establish that right. He may determine the validity of the evidence, or receive testimony to controvert it, and we cannot assent to the proposition that an officer or tribunal, invested with jurisdiction of a matter, loses that jurisdiction by not giving sufficient weight to evidence, or by rejecting proper evidence, or by admitting that which is improper."

In Low Wah Suey v. Backus, 225 U. S. 460–468, 32 Sup. Ct. 734, 735 (56 L. Ed. 1165), the Supreme Court has again declared the conclusiveness of decisions of the executive officers of the government in this class of cases:

"A series of decisions in this court has settled that such hearings before executive officers may be made conclusive when fairly conducted. In order to successfully attack by judicial proceedings the conclusions and orders made upon such hearings, it must be shown that the proceedings were manifestly unfair, that the action of the executive officers was such as to prevent a fair investigation, or that there was a manifest abuse of the discretion committed to them by the statute. In other cases the order of the executive officers within the authority of the statute is final. United States v. Ju Toy, 198 U. S. 253 [25 Sup. Ct. 644, 49 L. Ed. 1040]; Chin Yow v. United States, 208 U. S. 8 [28 Sup. Ct. 201, 52 L. Ed. 369]; Tang Tun v. Edsell, 223 U. S. 673 [32 Sup. Ct. 359, 56 L. Ed. 606]."

The District Judge in the present case did not find that a fair hearing had been denied the petitioner, or that there had been any abuse of discretion on the part of the immigration officers in the proceedings, and we do not so find, after a careful inspection of the record. Chin Yow v. United States, 208 U. S. 8, 12, 28 Sup. Ct. 201, 52 L. Ed. 369.

We conclude, therefore, that there was nothing in the case for the District Court to review, and that the judgment of the court dismissing the petition was correct.

The judgment of the District Court is accordingly affirmed.