**MIERS v. BROWNLOW, Immigration Inspector.**

District Court, S. D. Alabama, S. D. August 20, 1927.

1. **Aliens** ⟨⟩54(14)—Unless record show some evidence warranting exclusion of one claiming American nativity, hearing must be regarded as unfair.

Where a board of special inquiry excluded a boy arriving from a foreign port as a stowaway and claiming to have been born in the United States on his own testimony, which supported his claim "and other evidence adduced at the hearing," but there is no other evidence in the record, the hearing must be regarded as unfair.

2. **Aliens** ⟨⟩54(10)—Constitutional law ⟨⟩318—Department rule 11, denying counsel before board of special inquiry to alien seeking admission, held invalid as denial of due process and discriminatory.

Rule 11 of Commissioner of Labor, denying right of counsel before a board of special inquiry to an alien applying for admission, is not authorized by any statute, and is a denial of due process of law, and moreover an unjust discrimination between aliens seeking admission and those arrested for deportation, who by rule 18 are given right of counsel in proceedings against them.

Habeas Corpus. Petition by George Miers against H. C. Brownlow, Immigration Inspector, for writ of habeas corpus. Proceedings of immigration authorities set aside, and petitioner remanded for new hearing.

Armbrecht & Hand, of Mobile, Ala., for petitioner.

Alex C. Birch, U. S. Atty., of Mobile, Ala., for respondent.

ERVIN, District Judge. This matter comes on to be heard on a habeas corpus proceeding, where it is charged that a hearing before three immigration inspectors was unfair to one George Miers, a youth of about 17 years of age, who came to this country from Naples as a stowaway on the steamship Texas.

Before the hearing, William H. Armbrecht, a reputable attorney of Mobile, wrote the inspector in charge, informing him that Miers claimed to be an American citizen, and asking leave to appear at the hearing as attorney for Miers. This request was denied because of rule 11 of the Department, which reads as follows:

"Paragraph 1. Boards of special inquiry

shall determine all cases as promptly as in the estimation of the immigration officers in charge the circumstances permit, due regard being had to the necessity of giving the alien a fair hearing. Hearings before the boards 'shall be separate and apart from the public'; but the alien may have one friend or relative present after the preliminary part of the hearing has been completed: Provided, first, that such friend or relative *is not and will not be employed by him as counsel or attorney;* second, that, if a witness, he has already completed the giving of his testimony; third, that he is not an agent or a representative at an immigration station of an immigrant aid or other similar society or organization; and, fourth, that he is either actually related to or an acquaintance of the alien." (Italics mine.)

The boy was examined by the board, and his testimony taken down, and no other testimony was offered or considered by the board so far as the record shows.

There are two questions urged upon me: First, that there was no testimony showing Miers to be an alien. Second, the denial of the right to have an attorney present rendered the proceedings unfair.

[1] The youth claimed to be an American citizen. It is rather suggestive that his alien-age was assumed. In the beginning, the chairman, before any evidence was offered, states him to be "the alien George Miers." He was then sworn and examined by the chairman and stated that he was about 17 years of age and came here from Naples as a stowaway on the steamship Texas; that he left New York when quite young with his parents and went to Naples; that his parents talked English to him; that they both died in Naples; does not now remember their first names nor the street addresses where they lived; that he had two sisters in Naples, one of whom married, but does not know their names or where they are; that he left an older brother in New York but does not know anything of him; that he has since his parents died worked around the docks at Naples, and worked on ships; he has made a living, and is, while small, healthy.

At the conclusion of his examination, one of the inspectors made a motion: "The alien before the board arrived as a stowaway; * * * the alien is unable to produce any supporting evidence of his claimed nativity. * * * In view of this *and other evidence adduced at the hearing,* it is my opinion that George Miers is an alien; and I therefore move to exclude him as a stowaway, a person likely to become a public charge, and as

coming in in violation of the Immigration Act of 1924, being an alien without a proper visa." (Italics mine.)

The record shows no other evidence as adduced, and the way it reads certainly strongly suggests he was already prejudged and the hearing was a mere formality, but remembering that this was not a judicial investigation and that the boy came as a stowaway from a foreign port, where he grew up, does furnish evidence from which it might be inferred that he was an alien.

If there was other evidence adduced but it was not put in the record, then one would have a similar question as considered in Kwock Jan Fat v. White, 253 U. S. 454, on page 464, 40 S. Ct. 566, 570 (64 L. Ed. 1010), where the court says: "The acts of Congress give great power to the Secretary of Labor over Chinese immigrants and persons of Chinese descent. It is a power to be administered, not arbitrarily and secretly, but fairly and openly, under the restraints of the tradition and principles of free government applicable where the fundamental rights of men are involved, regardless of their origin or race. It is the province of the courts, in proceedings for review, within the limits amply defined in the cases cited, to prevent abuse of this extraordinary power, and this is possible only when a full record is preserved of the essentials on which the executive officers proceed to judgment. For failure to preserve such a record for the information, not less the Commissioner of Immigration and of the Secretary of Labor than of the courts, the judgment in this case must be reversed. It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country."

The acts also give equally as great power over all aliens, so that what is here said applies to all aliens. If there was other evidence adduced as the motion recites, then the failure to record it brings the case directly under the case of Kwock Jan Fat.

[2] The second question presents a much more serious proposition, viz.: Whether the Commissioner of Labor has authority under the Immigration Acts to pass rule 11, and whether rule 11 and rule 18, when construed together, do not show an unfair discrimination by the Department against an applicant for entry in favor of an alien who is to be deported.

Paragraph 2 of subdivision D, rule 18, reads as follows:

"At the hearing under the warrant of ar-

rest, the alien shall be allowed to inspect the warrant of arrest and shall be apprised that he may be represented by counsel. The alien shall be required then and there to state whether he desired counsel or waives the same, and his reply shall be entered on the record. If counsel be selected, he shall be permitted to be present during the conduct of the hearing and to offer evidence to meet any ·evidence presented or adduced by the government. * * *· ”

Of course Congress has power to exclude all aliens, as well those trying to come in, as those already in the country. In re Kosopud (D. C.) 272 F. 333.

The Commissioner of Labor is given power to establish such rules and regulations not inconsistent with law for carrying out. the immigration laws. U. S. Code, § 102, p. 129 (8 USCA § 102). Such rules cannot go beyond the powers delegated by the statute. The Parthian (C. C. A.) 276 F. 903; U. S. v. Stump (C. C. A.) 292 F. 354. Aliens have the right to enter the United States except so far as the right is restricted by our statutes. U. S. v. Williams (D. C.) 203 F. 156.

Is there anything in the statute which gives the Department the right to exclude an attorney for the alien? I have found none. Section 153, p. 138, United States Code (8 USCA § 153), provides for boards of special inquiry, and says: “All hearings before·such boards shall be separate and apart from the public, but the immigrant may have one friend or relative present under such regulations as may be prescribed by·the Secretary of Labor.”

The public here referred to to be excluded does not mean an attorney for the immigrant, but those who attend out of curiosity. In re Madeiros (D. C.) 225 F. 91.

A careful reading of the statutes providing for the exclusion and deportation of aliens fails to show any greater rights thereby given to aliens who are to be deported than is given to those who are to be excluded.

Speaking of the Deportation Acts, Judge Rogers says, in U. S. v. Uhl (C. C. A.) 266 F. 652, “The act * * * contemplates a summary investigation, and not a judicial trial.”

Most of these hearings are to be before the same board of inspectors, while some are before a single inspector. Certain it is that under the various acts an alien acquired no rights because he gets into the country either legally or illegally. For instance, see subdivision (g) § 137, p. 133, of the Code (8 USCA § 137), which says:

“Any alien who, at any time after entering the United States, is found to have been at the time of entry, or to have become thereafter, a member of any one of the classes of aliens enumerated in this section shall, upon the warrant of the Secretary of Labor, be taken into.custody and deported in the manner provided in this subchapter.”

The manner provided is the same for those to be deported and those to be excluded.

It is contended for the government that there is a difference between the rights of an alien knocking at the door for entry and of one already in the country, and several cases are cited. When I examine those cases I find they arose under the Chinese Exclusion Act, where the act itself provides for a judicial hearing of a Chinaman taken up in this country. White v. Chin Fong, 253 U. S. 90, 40 S. Ct. 449, 64 L. Ed. 797; U. S. v. Woo Jan, 245 U. S. 552, 38 S. Ct. 207, 62 L. Ed. 466; and many others.

I have found no case holding that an alien other than a Chinese taken up for deportation has greater rights than one stopped for exclusion. There seem to be some loose expressions in some cases that intimated that, but no decisions to that effect; they no doubt were caused by failing to notice that Chinese taken up for deportation were given by the act a right of a judicial hearing. Even had there been such decisions, they would have to point to some provision in the Congressional acts in which the right was conferred.

The whole question is one of construction of the acts, and, if they do not make the distinction, then the Secretary of Labor cannot do so by rule. He can make rules to “carry out” the acts but not to extend or add to them. As said in U. S. v. Williams, supra, aliens have the right to enter, stay in or leave the United States except so far as restricted by the statutes.

“The only matter that we have to deal with is the construction of the statute with reference to the present case. * * * The statute by enumerating the conditions upon which the allowance to land may be denied, prohibits the denial in other cases. And when the record shows that a Commissioner of Immigration is exceeding his power, the alien may demand his release upon habeas corpus.” Gegiow v. Uhl, 239 U. S. 9, 36 S. Ct. 3, 60 L. Ed. 114.

There are many cases holding that in deportation cases the alien has the right to be represented by counsel. It may be, however, these were based on rule 18, for most of them do not undertake to show how they arrive at

their conclusion. There is one case, however, that might be quoted. Judge Morton, in Ex parte Chin Loy You (D. C.) 223 F. 838, says:

"To make the defendant's substantial rights in a matter involving personal liberty depend on whether the proceeding be called 'criminal' or 'civil' seems to me unsound. Indeed, historically the right to counsel in civil cases and upon charges of misdemeanors antedates such right in cases of felony and treason. Cooley, Constitutional Limitations, p. 475. 'The presence, advice, and assistance of counsel' is said by Story to be necessarily included in 'due process of law.' Story on the Constitution, p. 668. Without undertaking to say that a prisoner has an absolute right to counsel before administrative boards, not composed of lawyers, or that the denial of counsel would in every case prevent such proceedings from being fair, I am of opinion that, under such circumstances as are disclosed in this case, where counsel for a prisoner seasonably requests the privilege of conferring with him before the trial and of being present during the taking of the evidence, the refusal of that request puts upon the official so acting a great burden of explanation and of scrupulous regard for the prisoner's rights."

In the Japanese Immigration Case, 189 U. S. 86, 23 S. Ct. 611, 47 L. Ed. 721, the court says: "But this court has never held, nor must it now be understood as holding, that administrative officers, when executing the provisions of a statute involving the liberty of persons, may disregard the fundamental principles that inhere in 'due process of law' as understood at the time of the adoption of the Constitution."

Most of us would concede that both Judge Story and Judge Cooley were fairly familiar with what was understood to be "due process of law" at the time of the adoption of our Constitution.

There is one case in which it is held that an immigrant had no right to be represented before the Immigration Board. Buccino v. Williams (C. C.) 190 F. 897. The decision was based on the fact that there was nothing in the statute which calls for the presence of counsel before Immigration Boards.

There is no consideration of the power of the Secretary of Labor to pass such a rule or to pass one rule for one alien and a different rule for another alien. Even conceding the power to pass a rule barring counsel, such rule must be uniform. Surely no one will contend that the Department is given power to classify aliens and to make different rules to fit the departmental view as to each class. Where is there in the acts any such power? If it be not found in the statutes, then there exists no such power, and the two differing rules would be an unjust discrimination against the class seeking to enter.

It may be said that the testimony of this youth justifies the ruling of the board, and that he testified to nothing showing his right to enter.

Remembering that he is only 17 years of age and is inexperienced and was examined only by members of the board, and only answered such questions as were asked by them, volunteering no statement, let me ask what judge or lawyer of any experience has not seen a witness examined by one side make an apparently impregnable case and then just one or two skillful questions are put by the opposite counsel and the case falls like a house of cards.

But it may be said counsel had the record on appeal. If you let me make the record on the examination without giving the other side a hearing in making it, let me ask, What good would the record do him after it is made?

My conclusion is that there was no power given by the statutes to pass the rule and also that the two rules make an unjust discrimination in favor of those sought to be deported as against those sought to be excluded.

The enforcement against the applicant of rule 11 made the proceedings unfair to him.

A decree will be entered setting aside the proceedings before the board as unfair, but remanding the applicant to the custody of the inspector in charge of immigration, to be given a hearing as required by the statutes.