**UNITED STATES ex rel. ALBRO v. KARNUTH, Dist. Director of Immigration, et al.**

District Court, W. D. New York. December 23, 1927.

Botsford, Mitchell, Albro & Weber, of Buffalo, N. Y. (Preston M. Albro, of Buffalo, N. Y., of counsel, and Robert A. Reid, D. C. L., of Toronto, Ont., Canada, on the brief), for relators.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Richard A. Grimm, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for respondents.

HAZEL, District Judge. The petition herein for writ of habeas corpus, verified by the attorney for the relators, states, inter alia, that the relators are unlawfully restrained of their liberty and are detained under color of the authority of the United States immigration officials; that the relator Cook is a native of Scotland, residing in Niagara Falls, Ontario, and had come to Buffalo to seek employment, while the relator Danelon is a native of Italy, who also resides in Niagara Falls, Ontario, and is employed as a laborer in industries at Niagara Falls, N. Y. It appears, by the return, that the relators arrived here in the forenoon of December 1, 1927, from their homes in Niagara Falls, Ontario, across from the bridge at Niagara Falls, N. Y.; that both, for some time past, had been crossing back and forth daily, and neither intends to live in the United States, but they intend to continue residing in Canada; and that neither was possessed of an unexpired consular immigration visa, as required by the Immigration Act, of 1924 (Comp. St. §§ 4289¾–4289¾nn).

The Special Board of Inquiry, consisting of three inspectors, before whom the hearing was had, thereupon unanimously refused admission to the aliens, advising them that they had the right to appeal to the Secretary of Labor, to which each replied that he wished to appeal. At the beginning of their hearing, they requested that their attorney, H. Ely Goldsmith, Esq., be heard in their behalf, but this request was denied, upon the ground that they were not entitled to counsel under rule 11, subd. (b) of the Immigration Rules of March 1, 1927.

Without prosecuting an appeal, and before their exclusion, the aliens applied for writ of habeas corpus, substantially claiming that they were not immigrants, but were temporary visitors for business. At the hearing on the writ, counsel stated that it was not intended to appeal to the Secretary of Labor, since it was anticipated that the decision of the Special Board of Inquiry would be sustained, in view of General Order 86, which is attacked as contrary to the statute, on the ground that section 3 of the Immigration Act (8 USCA § 203) exempts aliens visiting the United States temporarily for business from the classification of immigrants, and is inapplicable to the relators, who came here to work and labor, or in search thereof. Failure to exhaust the remedy provided by law was strongly condemned in U. S. ex rel. Grau v. Uhl (D. C.) 262 F. 532, and especially see U. S. v. Sing Tuck, 194 U. S. 161, 24 S. Ct. 621, 48 L. Ed. 917; but I will pass on the questions presented, inasmuch as the facts are not in dispute and we are dealing solely with questions of law.

It was also alleged in the petition that the writ was sought because section 17 of the Immigration Act of 1917 (8 USCA § 153), providing for a stay of deportation until an appeal taken was decided, was continually violated by the immigration authorities, and aliens returned to Canada before their appeals were taken, and without opportunity to test the correctness of their decisions. There is nothing before me to support this allegation. Indeed, I feel justified in assuming the contrary, since the immigration officials have

always, as my experience has shown, treated aliens considerately, and have allowed them complete opportunity to test the validity of hearings in the courts, and have delayed deportations until the questions were finally passed upon. The relators were brought into court on the return day by defendants director of immigration and inspector in charge, and by consent the proceedings were continued to allow time to file a return; the relators, meanwhile, being at large on their recognizance.

Counsel for the relators and the United States attorney, appearing for respondents, urge that this court should pass upon the right of aliens to be represented by counsel at hearings before the Special Board of Inquiry, though the relators were accorded a second hearing, at which, as I understand it, they were represented by Mr. Goldsmith.

Since many aliens, not of Canadian birth or citizenship, arrive daily from Canada, who labor in this country, especially in the border cities, and who likewise have been refused counsel at hearings, under rule 11, the question of the right to exclude counsel will be considered. Rule 11 of the Immigration Rules of March 1, 1927, reads as follows:

"Hearings before the boards shall be separate and apart from the public; but the aliens may have one friend or relative present after the preliminary part of the hearing has been completed, provided—

"1. That such friend or relative is not and will not be employed by him as counsel or attorney."

This rule, or a similar rule, has several times been before the courts for construction in this circuit. In U. S. v. Williams (C. C.) 190 F. 897, for example, the aliens, on their examination preliminary to admission, were refused counsel, and Judge Lacombe ruled that the statute did not authorize the presence of counsel at exclusion hearings; that, where aliens had entered and had resided here, they occupied a different status, but that Congress evidently did not intend that the qualifications of aliens intending to enter the United States should be tested by trials calling for the presence of counsel to represent them. On the contrary, the learned court said:

"Congress relegated this question to administrative boards who might act summarily and expeditiously, and, to provide against an abuse of their discretion, accorded to the alien a right of appeal to the Secretary of * * * Labor."

See, also, U. S. ex rel. Falco v. Williams (C. C.) 191 F. 1001, U. S. ex rel. Chin Fook Wah v. Dunton (D. C.) 288 F. 959, and U.

S. v. Greenawalt (D. C.) 213 F. 901. The relators did not ask to have a friend or relative present, as permitted by the regulation under which the hearing was conducted, and, as the order or regulation expressly forbids the aid of counsel, there has been, in my opinion, no deprivation of any legal or constitutional right. The hearing was purely inquisitorial, without its having any relation to a criminal examination or investigation. The entry or admission of aliens into the United States, as said in the Greenawalt Case, is a high privilege bestowed, and not a legal right, and Congress has unquestionably the power to delegate officials or nonjudicial tribunals to exercise functions of a judicial or administrative character for the purpose of insuring effective compliance with the immigration laws including the deportation of aliens who have unlawfully entered or their exclusion at the boundary. It is not within the province of this court to attempt to control or interfere with the determination of such officials or tribunals save only to protect aliens from the abuse of the discretion of administrative boards by way of habeas corpus.

But it is strongly urged that the enforcement of rule 11 is nothing less than a denial of due process of law and that it is in conflict with rule 18 which permits the presence of counsel in deportation proceedings. I discover no conflict or inconsistency since a distinction with relation to proceedings against aliens domiciled in the United States and aliens stopped at the border for summary examination as to their right to enter is believed to be a proper exercise of procedure (U. S. v. Williams, supra), and the power to make such an order or regulation was not beyond the power delegated by Congress to the Bureau of Immigration.

It is, however, urged that in Miers v. Brownlow (D. C.) 21 F.(2d) 376, it was decided that rule 11 was unauthorized, and that its enforcement by a Special Board of Inquiry constituted a denial to aliens of due process of law, and, moreover, that the rule unjustly discriminates between aliens seeking admission and those proceeded against for deportation. It was, no doubt, truly said in that case that there is no express provision in the statute giving power to the Secretary of Labor or the Bureau of Immigration to classify aliens, or to make rules applicable to resident aliens and aliens subject to exclusion at the boundary. But rule 18, for example, which confers the right of counsel in deportation cases, has generally been accepted by the courts as being within the power

and scope of the department, and may be said to have been established by usage and practice.

Beyond this, however, the department, which is charged with the enforcement of the Immigration Act, has the right, and, indeed, it is its duty, to prescribe orders, regulations, and rules, not only with relation to the details of procedure, but any fair and reasonable rule or method which will enable effective enforcement of the statute. If the prescribed regulation is not in conflict with the Immigration Act, it certainly falls within the scope of official duty to establish it, even though it is not specifically indicated as to the details. U. S. v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; U. S. v. Birdsall, 233 U. S. 231, 34 S. Ct. 512, 58 L. Ed. 930. It seems to me plain that a rule or order to expedite inquiries of aliens, or hearings before a Special Board of Inquiry, at the border, to summarily ascertain the qualifications of aliens desiring to enter the United States, should not match judicial trials, or be conducted with similar procedural rules, and therefore the suggestion of deprivation of due process of law is not believed applicable, although due process of law, if a fair hearing is not accorded, may be tested on writ of habeas corpus.

The next point earnestly presented is that General Order 86—a new order issued April 1, 1927, by the Commissioner General, approved by the Assistant Secretary of Labor—is invalid and in contravention of the Immigration Act. The order relates to land border crossing procedure, and reads as follows:

"1. Hereafter aliens residing in foreign contiguous countries and entering the United States to engage in existing employment or to seek employment in this country will not be considered as visiting the United States temporarily as tourists, or temporarily for business or pleasure, under any provisions of the Immigration Law which exempt visitors from complying with certain requirements thereof; that is, they will be considered as aliens of the 'immigrant' class.

"2. However, the following aliens of the said 'immigrant' class residing in foreign contiguous countries and who are now enjoying the border crossing privilege may continue to so enjoy it upon the payment of head tax, provided such head tax was assessable on aliens entering permanently at the time of original admission, and, provided further, that they are not coming to seek employment."

It is with the first provision that we are herein chiefly concerned, since the second provision relates to aliens living in foreign contiguous countries, whose border privilege to pass to and fro was continued on payment of a head tax, and provided they are not coming to seek employment. The relators here are aliens domiciled in a foreign contiguous country, and who are daily at work in this country, or who seek employment therein, and, as to such aliens, they are not considered by the order as visiting this country temporarily for business, under an exemption enumerated in the Immigration Law, and they are regarded as aliens of the immigrant class pure and simple, as distinguished from nonimmigrants.

I think the order, to which the relators have objected, has the warrant of law, for by title 8, c. 6, § 102, USCA, power is expressly conferred upon the Commissioner General of Immigration, under the direction of the Secretary of Labor, to establish rules and regulations not inconsistent with the law, to effectively carry out the Immigration Act and its object and purposes. I discover no inconsistency in the order, and the aliens, by its issuance, in my opinion, are not deprived of any rights accorded them by the Immigration Act. That they are "immigrants" is plainly apparent from the definition which Congress gives the term. Title 8, c. 6, § 203, USCA. And the exception (subdivision 2) does not mean that a daily workman or employee of the alien class, retaining his residence in foreign contiguous territory, is permitted to pursue an ordinary vocation for a wage, or that he comes here temporarily for business, trade, or commerce. To come for business, within the meaning of the statute, indicates a temporary purpose to engage in a business transaction, as that of a merchant, or one engaging in traffic or trade.

Congress did not use the word "business" in its broadest sense, or in a sense including daily labor or an occupation, trade, or calling for hire. It had in mind a restriction of the broad term "business," as is clearly manifest from the general scope and purpose of the act. The relators, under the order, were classified, or fall within the classification or grouping of quota immigrants, and before the examining tribunal or board they were required to prove that they were not subject to exclusion. Their hearing was fairly conducted, and they were not subject to admission without first having procured an unexpired immigration visa. Section 13, Immigration Act 1924 (8 USCA § 213).

[3] The support of the contended invalidity of the order, however, also proceeds on the theory that, as to relator Cook, a subject of Great Britain, article 3 of the Jay Treaty of 1794 (8 Stat. 117), between Great Britain and the United States, applies and establishes her right to "freely * * * pass and repass by land or inland navigation, into the respective territories and countries, * * * and freely * * * carry on trade and commerce with each other." It is deemed unnecessary to define the scope of article 3 of the Jay Treaty, or to hold that it is repealed or modified by legislative enactment, although in Ex parte Gin Kato (D. C.) 270 F. 343, where it was contended that early treaty stipulations with Japan were in conflict with the Immigration Act of 1917, it was held in unqualified terms that Congress has the right to exclude or deport aliens in its discretion as an inherent right of sovereignty, and that it is the duty of the court to follow the last expression of the law-making authority. See, also, Cherokee Tobacco Case, 11 Wall. 616, 20 L. Ed. 227; U. S. v. Gue Lim, 176 U. S. 459, 20 S. Ct. 415, 44 L. Ed. 544; Fong Yue Ting v. U. S., 149 U. S. 720, 13 S. Ct. 1016, 37 L. Ed. 905.

Though the Jay Treaty, it is strongly urged, protects Miss Cook from exclusion, I nevertheless, assuming article 3 to be still in force, think that it cannot be considered as including British subjects not born in Canada, whose status is that of immigrants, and who seek to cross the border solely to labor here, or to seek employment at trades or avocations, without establishing a domiciliary status, as provided by the Immigration Act of 1924. The relators were not passing from one country to another to carry on trade or commerce, as those terms are ordinarily understood, but, as pointed out, simply to work for a daily wage, crossing back to their homes in Canada in the evening, and returning in the morning, and such free passing and repassing was not contemplated by the Jay Treaty or by Congress in the enactment of the Immigration Act.

I conclude that Order No. 86 is a valid regulation, and requires that the relators, before entering, must have an immigration visa, and that they come from contiguous territory to seek employment, or to work for a wage, does not change their classification as immigrants.

Other questions argued at the bar have been considered, but may be passed as unsubstantial and without further discussion.

The writ of habeas corpus, heretofore issued, is dismissed, and both relators remanded to the custody of the immigration officials, for deportation to the country of which they are residents.